1   GREGORY P. DRESSER (SBN: 136532)
    GDresser@mofo.com
2   JASON A. MALINSKY (SBN: 259761)
    JMalinsky@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Telephone: 415-268-7000
5   Facsimile:  415-268-7522

6   KIMBERLY R. GOSLING (SBN: 247803)
    KGosling@mofo.com
7   MORRISON & FOERSTER LLP
    12531 High Bluff Drive
8   San Diego, California  92130-2040
    Telephone: 858-720-5100
9   Facsimile:  858-720-5125

10  Attorneys for Defendants
    JPMORGAN CHASE BANK, N.A. and
11  JPMORGAN CHASE BANK, N.A., as successor by merger to
    CHASE HOME FINANCE LLC

12                    UNITED STATES DISTRICT COURT

13                  SOUTHERN DISTRICT OF CALIFORNIA

14

15

16  DIANNA MONTEZ, on behalf of herself and     Case No.    11CV0530 JLS WMC
    all others similarly situated,
                                                **DEFENDANTS' MEMORANDUM
17                 Plaintiff,                    OF POINTS AND AUTHORITIES
                                                IN SUPPORT OF  THEIR MOTION
18          v.                                  TO DISMISS PLAINTIFF'S
                                                COMPLAINT**
19  CHASE HOME FINANCE LLC and
    JPMORGAN CHASE, N.A.,                       Date:         July 21, 2011
20                                              Time:         1: 30 p.m.
                   Defendants.                  Courtroom:    6
21                                              Complaint filed:  March 17, 2011

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 1

    A.    The U.S. Treasury's Home Affordable Modification Program ........................... 1

    B.    Prior Litigation to "Enforce" HAMP ................................................................. 3

    C.    Plaintiff's Complaint ......................................................................................... 4

LEGAL STANDARD .................................................................................................. 6

ARGUMENT .............................................................................................................. 6

I.    PLAINTIFF IS NOT AN INTENDED BENEFICIARY OF THE SPA AND LACKS STANDING TO SUE (COUNT 6) .............................................................. 6

II.    PLAINTIFF FAILS TO PLEAD ESSENTIAL ELEMENTS OF A CLAIM FOR BREACH OF A WRITTEN CONTRACT (COUNT 5) .............................................. 9

    A.    Chase Offered Plaintiff a Permanent Modification ........................................... 10

    B.    The Plain Language of the Trial Plans Does Not Promise a Modification ........... 10

    C.    Plaintiff Does Not Allege Any Other Binding Agreement ................................... 11

    D.    The Breach of Contract Claim Fails for Lack of Consideration ........................... 11

        1.    Partial Mortgage Payments Are Not Consideration ................................... 12

        2.    Providing Financial Information and Describing Personal Circumstances Does Not Constitute Consideration Because the Information Was Part of the Application Process ..................................... 13

        3.    Plaintiff's Other Acts or Omissions Do Not Constitute Consideration ............................................................................................ 13

    E.    Any Alleged Promise to Provide a Permanent Modification Lacked Material Terms ................................................................................................ 13

III.    THERE CAN BE NO BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING BECAUSE PLAINTIFF ALLEGES NO VALID CONTRACT (COUNTS 5 AND 6) ............................................................................................ 14

IV.    PLAINTIFF HAS NOT PLED A "CLEAR AND UNAMBIGUOUS" PROMISE OR ANY OF THE OTHER ELEMENTS OF PROMISSORY ESTOPPEL (COUNT 7) ......................................................................................................... 15

    A.    Plaintiff Does Not Plead a "Clear and Unambiguous" Promise in the Trial Plans to Permanently Modify Her Loan ............................................................ 15

    B.    Plaintiff Does Not Adequately Allege Reasonable and Detrimental Reliance .......................................................................................................... 16

V.    PLAINTIFF'S LOAN CONTRACT BARS THE CLAIM FOR UNJUST ENRICHMENT (COUNT 8) ................................................................................... 17

VI.    THE CLAIM FOR VIOLATION OF THE ROSENTHAL ACT FAILS BECAUSE PLAINTIFF ALLEGES NO DEBT COLLECTION ACTIVITY AND THE COMMUNICATIONS WERE NOT MISLEADING TO THE LEAST SOPHISTICATED DEBTOR (COUNT 4) ................................................................. 18

**TABLE OF CONTENTS**
(continued)

Page

A.   Plaintiff Does Not Allege Debt Collection Activity ............................................. 19

B.   The Alleged Misrepresentations Would Not Mislead the Least
     Sophisticated Debtor .................................................................................................. 20

VII.  PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF
      CALIFORNIA'S UNFAIR COMPETITION LAW (COUNTS 1, 2, AND 3)................. 21

A.   Plaintiff's UCL Claims Are Derivative of Her Breach of Contract Claims ......... 21

B.   Plaintiff Does Not Plead Any "Unlawful" Act ....................................................... 22

C.   Plaintiff Does Not Plead Any "Unfair" Act............................................................ 22

D.   Plaintiff Does Not Plead Any "Fraudulent" Act .................................................... 24

E.   Plaintiff Lacks Standing to Assert a UCL Claim ................................................... 24

CONCLUSION ....................................................................................................................... 25

# TABLE OF AUTHORITIES

Page

CASES

*Aleem v. Bank of Am., N.A.*,
   No. 09-cv-01812-VAP (RZx), 2010 U.S. Dist. LEXIS 11944 (C.D. Cal. Feb. 9, 2010) ......... 3

*Animal Legal Def. Fund v. Mendes*,
   160 Cal. App. 4th 136 (2008) ........................................... 24

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................. 6, 11, 24

*Astra USA, Inc. v. Santa Clara Cnty.*,
   131 S. Ct. 1342 (2011) ................................................. 6

*Bailey v. Sec. Nat'l Servicing Corp.*,
   154 F.3d 384 (7th Cir. 1998)............................................ 19

*Banco Do Brasil, S.A. v. Latian, Inc.*,
   234 Cal. App. 3d 973 (1991)........................................... 14

*Beck v. Am. Health Grp. Int'l, Inc.*,
   211 Cal. App. 3d 1555 (1989)........................................... 14

*Beckett v. Air Line Pilots Ass'n*,
   995 F.2d 280 (D.C. Cir. 1993) .......................................... 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................. 6, 11, 23

*Bell v. City of Cleveland*,
   No. 1:07cv1476, 2007 U.S. Dist. LEXIS 62566 (N.D. Ohio Aug. 24, 2007) ......................... 7

*Blumer v. Madden*,
   128 Cal. App. 22 (1932)............................................... 13

*Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*,
   688 F. Supp. 2d 940 (N.D. Cal. 2010) .................................. 15

*Bosque v. Wells Fargo Bank, N.A.*,
   No. 10-CV-10311, 2011 U.S. Dist. LEXIS 8509 (D. Mass. Jan. 26, 2011) .......................... 11

*Bourdelais v. J.P.Morgan Chase Bank, N.A.*,
   No. 3:10-CV-670, 2011 U.S. Dist. LEXIS 35507 (E.D. Va. Apr. 1, 2011)............... 10, 11, 16

*Brown v. Bank of NY Mellon*,
   No. 1:10-CV-550, 2011 U.S. Dist. LEXIS 6006 (W.D. Mich. Jan. 21, 2011) ....................... 10

**TABLE OF AUTHORITIES**
(continued)

Page

*Burgess v. Rodom*,
    121 Cal. App. 2d 71 (1953) .................................................................................. 14

*Burtzos v. Countrywide Home Loans*,
    No. 09-cv-2027W (WMc), 2010 U.S. Dist. LEXIS 53509 (S.D. Cal. June 1, 2010) .............. 6

*Bustamante v. Intuit, Inc.*,
    141 Cal. App. 4th 199 (2006) ........................................................................ 10, 14

*Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc.*,
    94 Cal. App. 4th 151 (2001) ............................................................................. 18

*Carma Dev. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
    2 Cal. 4th 342 (1992) ..................................................................................... 15

*Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ............................................................................... 22, 23

*Cole v. Toll*,
    No. 07-0590, 2007 U.S. Dist. LEXIS 85173 (E.D. Pa. Nov. 16, 2007) ................................ 19

*DeLeon v. Wells Fargo Bank, N.A.*,
    No. 10-CV-01390, 2011 U.S. Dist. LEXIS 8296 (N.D. Cal. Jan. 28, 2011) ......................... 25

*Donohue v. Quick Collect, Inc.*,
    592 F.3d 1027 (9th Cir. 2010) ........................................................................... 20

*Dooms v. Fed. Home Loan Mortg. Corp*,
    No. CV F 11-0352 LJO DLB, 2011 U.S. Dist. LEXIS 38550
    (E.D. Cal. Mar. 31, 2011) ................................................................................ 25

*Durmic v. J.P. Morgan Chase Bank, NA*,
    10-CV-10380-RGS, 2010 U.S. Dist. LEXIS 123184 (D. Mass. Nov. 24, 2010) ................... 11

*Escobedo v. Countrywide Home Loans*,
    No. 09cv1557 BTM(BLM), 2009 U.S. Dist. LEXIS 117017
    (S.D. Cal. Dec. 15, 2009) ........................................................................ 6, 8, 9, 17

*Fortaleza v. PNC Fin. Servs. Grp., Inc.*,
    642 F. Supp. 2d 1012 (N.D. Cal. 2009) ................................................................ 15

*Garcia v. World Sav., FSB*,
    183 Cal. App. 4th 1031 (2010) .......................................................................... 12

*Gillespie v. Chase Home Fin., LLC*,
    No. 3:09-CV-191-TS, 2009 U.S. Dist. LEXIS 108837 (N.D. Ind. Nov. 20, 2009) ............... 20

iv

**TABLE OF AUTHORITIES**
(continued)

Page

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
　　100 F. Supp. 2d 1086 (C.D. Cal. 1999) ................................................................ 16

*Gonzalez v. First Franklin Loan Servs.*,
　　No. 1:09-cv-00941 AWI-GSA, 2010 U.S. Dist. LEXIS 1657 (E.D. Cal. Jan. 9, 2010) .......... 4

*Grant v. Aurora Loan Servs.*,
　　736 F. Supp. 2d 1257 (C.D. Cal. 2010) ................................................................ 6

*Grill v. BAC Home Loans Servicing LP*,
　　No. 10-CV-03057 FCD/GGH, 2011 U.S. Dist. LEXIS 3771
　　(E.D. Cal. Jan. 13, 2011) .............................................. 6, 7, 10, 11, 13, 17

*Hardwood v. Bank of Am.*,
　　No. 10-cv-02450, 2010 U.S. Dist. LEXIS 138082 (E.D. Cal. Dec. 17, 2010) ................ 18, 25

*Hoffman v. Bank of Am., N.A.*,
　　No. C10-2171 SI, 2010 U.S. Dist. LEXIS 70455
　　(N.D. Cal. June 30, 2010) ......................................................... 3, 4, 6, 7, 9

*Janda v. Madera Cmty. Hosp.*,
　　16 F. Supp. 2d 1181 (E.D. Cal. 1998) .............................................................. 12

*Javaheri v. JPMorgan Chase Bank, N.A.*,
　　No. CV10-08185 ODW (FFMx), 2011 U.S. Dist. LEXIS 36469
　　(C.D. Cal. Mar. 24, 2011) ............................................................................ 18

*Kessler v. Sapp*,
　　169 Cal. App. 2d 818 (1959) ......................................................................... 14

*Klamath Water Users Protective Ass'n v. Patterson*,
　　204 F.3d 1206 (9th Cir. 2000) ........................................................................ 9

*Laks v. Coast Fed. Sav. & Loan Ass'n*,
　　60 Cal. App. 3d 885 (1976) .......................................................................... 16

*Locke v. Wells Fargo Home Mortg.*,
　　No. 10-60286, 2010 U.S. Dist. LEXIS 126140 (S.D. Fla. Nov. 30, 2010) ................... 16

*Lonberg v. Freddie Mac*,
　　No. 10-6033, 2011 U.S. Dist. LEXIS 23137 (D. Or. March 3, 2011) ...................... 10

*Marks v. Bank of Am., N.A.*,
　　No. 03:10-CV-08039-PHX-JAT, 2010 U.S. Dist. LEXIS 61489
　　(D. Ariz. June 21, 2010) .................................................................... 3, 6, 8, 9

**TABLE OF AUTHORITIES**
(continued)

Page

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
　97 Cal. App. 4th 1282 (2002) ............................................... 24

*McKell v. Wash. Mut., Inc.*,
　142 Cal. App. 4th 1457 (2006) ............................................. 24

*Mehta v. Wells Fargo Bank, N.A.*,
　737 F. Supp. 2d 1185 (S.D. Cal. 2010) ................................ 11

*Melchior v. New Line Prods., Inc.*,
　106 Cal. App. 4th 779 (2003) ............................................... 18

*Mizrahi v. Wells Fargo Home Mortg.*,
　No. 09-cv-1387, 2010 U.S. Dist. LEXIS 59893 (D. Nev. June 11, 2010) ...................... 11, 13

*Morales v. Chase Home Fin. LLC*,
　No. 10-CV-02068-JSW, 2011 U.S. Dist. LEXIS 49698
　(N.D. Cal. Apr. 11, 2011) .......................................... 6, 8, 10, 15, 17, 20, 21, 22, 24

*Netbula, LLC v. BindView Dev. Corp.*,
　516 F. Supp. 2d 1137 (N.D. Cal. 2007) ................................. 9

*Palmer v. Stassinos*,
　348 F. Supp. 2d 1070 (N.D. Cal. 2004) ................................ 24

*People v. McKale*,
　25 Cal. 3d 626 (1979) ........................................................ 22

*Peterson v. Cellco P'ship*,
　164 Cal. App. 4th 1583 (2008) ............................................. 24

*Porter v. Fairbanks Capital Corp.*,
　No. 01 C 9106, 2003 U.S. Dist. LEXIS 8636 (N.D. Ill. May 20, 2003) ................................. 20

*Prasad v. BAC Home Loans Servicing LP*,
　No. 10-CV-2343, 2010 U.S. Dist. LEXIS 133938 (E.D. Cal. Dec. 7, 2010) ........ 10, 11, 13, 17

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*,
　11 Cal. App. 4th 1026 (1992) ............................................... 15

*Rennick v. O.P.T.I.O.N. Care, Inc.*,
　77 F.3d 309 (9th Cir. 1996) .................................................. 16

*Rubio v. Capital One Bank (USA), N.A.*,
　572 F. Supp. 2d 1157 (C.D. Cal. 2008) ................................ 22

**TABLE OF AUTHORITIES**
(continued)

Page

*Schnall v. Hertz Corp.*,
    78 Cal. App. 4th 1144 (2000) ............................................................................... 23

*Shurtliff v. Wells Fargo Bank, N.A.*,
    No. 1:10-CV-165, 2010 U.S. Dist. LEXIS 117962 (D. Utah Nov. 5, 2010) ......................... 11

*Simmons v. Cal. Inst. of Tech.*,
    34 Cal. 2d 264 (1949) .......................................................................................... 12

*Simmons v. Countrywide Home Loans, Inc.*,
    No. 09cv1245 JAH (JMA), 2010 U.S. Dist. LEXIS 65031 (S.D. Cal. June 29, 2010) ............ 6

*Simon v. Bank of Am., N.A.*,
    No.10-cv-00300-GMN-LRL, 2010 U.S. Dist. LEXIS 63480 (D. Nev. June 23, 2010) ........... 3

*Smith v. City & County of San Francisco*,
    225 Cal. App. 3d 38 (1990)................................................................................... 18

*Steiner v. Thexton*,
    48 Cal. 4th 411 (2010) ........................................................................................ 12

*Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co.*,
    520 F. Supp. 2d 1184 (C.D. Cal. 2007) .................................................................. 12

*Torres v. Litton Loan Servicing L.P.*,
    No. 10-cv-01709, 2011 U.S. Dist. LEXIS 4616 (E.D. Cal. Jan. 18, 2011) ...................... 10

*Turbeville v. JPMorgan Chase Bank*,
    No. 10-CV-01464, 2011 U.S. Dist. LEXIS 42290 (C.D. Cal. Apr. 4, 2011)................ 6, 11, 17

*US Ecology, Inc. v. California*,
    129 Cal. App. 4th 887 (2005) ............................................................................... 15

*Vida v. OneWest Bank, F.S.B.*,
    No. 10-987, 2010 U.S. Dist. LEXIS 132000 (D. Or. Dec. 13, 2010) .................................... 10

*Villa v. Wells Fargo Bank, N.A.*,
    No. 10cv81 DMS (WVG), 2010 U.S. Dist. LEXIS 23741
    (S.D. Cal. Mar. 15, 2010)........................................................................... 4, 6, 7, 8

*W. L.A. Pizza, Inc. v. Domino's Pizza, Inc.*,
    No. 2:07-cv-07484-FMC-MANx, 2008 U.S. Dist. LEXIS 45977 (C.D. Cal. Feb. 26,
    2008) ................................................................................................................. 22

*Walcker v. SN Commercial, LLC*,
    286 F. App'x 455 (9th Cir. 2008) .......................................................................... 19, 20

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Williams v. Geithner*,
   No. 09-1959 ADM/JJG, 2009 U.S. Dist. LEXIS 104096 (D. Minn. Nov. 9, 2009)......... 2, 4, 9


**STATUTES**

12 U.S.C.
   § 5219(a)(1)...................................................................................................... 1

15 U.S.C.
   § 1692, *et seq.* .............................................................................................. 19
   § 1692e .............................................................................................. 19, 20, 21

Cal. Bus. & Prof. Code
   § 17200...................................................................................... 21, 22, 24
   § 17204...................................................................................................... 24

Cal. Civ. Code
   § 1605...................................................................................................... 12
   § 1788, *et seq.* .............................................................................................. 19

Fed. R. Civ. P.
   8(a) ...................................................................................................... 6
   12(b)(6) .................................................................................................. 6


**OTHER AUTHORITIES**

HAMP Base Net Present Value Model Specifications (June 11, 2009), *available at*
   https://www.hmpadmin.com/portal/programs/docs/ hamp_servicer/npvoverview.pdf ........... 2

Supplemental Directive 09-01 (Apr. 6, 2009), *available at*
   https://www.hmpadmin.com//portal/programs/docs/hamp_servicer/sd0901.pdf ................... 1

Supplemental Directive 10-01 (Jan. 28, 2010), *available at*
   https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd1001.pdf ..................... 2

# INTRODUCTION

Plaintiff fell behind on her mortgage payments and asked Chase[1] for a loan modification. In response, Chase enrolled plaintiff in trial plans that temporarily modified her monthly payments, and then offered her a permanent modification.  Incongruously, plaintiff now alleges that Chase breached a promise contained in the trial plans to offer her a permanent modification. Plaintiff's claims all fail for the same fundamental reason: none of the trial plans promised a permanent loan modification—and even though no modification was promised, Chase offered plaintiff one.  Plaintiff cannot plead her way around these basic facts.  Chase therefore respectfully requests that the Court dismiss the Complaint without leave to amend.

# BACKGROUND

### A.     The U.S. Treasury's Home Affordable Modification Program

Because several of plaintiff's alleged trial plans arose under the Home Affordable Modification Program ("HAMP"), Chase provides the following background regarding that program.  In February 2009, the U.S. Department of the Treasury announced the Making Home Affordable Program, of which HAMP is a part.  Although HAMP's purpose is to assist at-risk homeowners, it does not aim to prevent all foreclosures—only "avoidable" foreclosures.  *See, e.g.*, 12 U.S.C. § 5219(a)(1).  HAMP does this by offering financial incentives for borrowers, servicers, and investors to enter into loan modifications where such modifications make economic sense for all parties.  (*See* Supplemental Directive ("SD") 09-01 (Apr. 6, 2009), *available at* https://www.hmpadmin.com//portal/programs/docs/hamp_servicer/sd0901.pdf.)

To accomplish HAMP's objectives, Treasury promulgated directives under which the net present value ("NPV") of a HAMP modified loan can be compared to the NPV of an unmodified loan (*i.e.*, a loan that will likely proceed to foreclosure).  (*See id.* at 4-5.)  The directives specify threshold criteria for modification eligibility, including a limit on outstanding principal and an existing payment exceeding 31% of the homeowner's gross income.  (*Id.* at 2.)  The directives set

---

[1] On May 1, 2011, defendant Chase Home Finance LLC was merged into defendant JPMorgan Chase Bank, N.A.  As a result, Chase Home Finance ceased to exist as a separate entity.  This motion refers to defendants collectively as "Chase."

forth a sequence of steps—known as the "waterfall"—for servicers to take to determine eligibility for a hypothetical loan modification that would lower the payment to no more than 31% of the borrower's gross monthly income.  (*Id.* at 8.)  The waterfall includes interest rate reduction, loan term extension, and principal forbearance.  (*Id.* at 9-10.)  Modification requests can fail at the waterfall stage.

The waterfall's purpose is to fashion a hypothetical modified loan that the servicer can use to conduct the NPV test.  "The NPV is essentially an accounting calculation to determine whether it is more profitable to modify the loan or allow the loan to go into foreclosure." *Williams v. Geithner*, No. 09-1959 ADM/JJG, 2009 U.S. Dist. LEXIS 104096, at *9 n.3 (D. Minn. Nov. 9, 2009).  (*See* HAMP Base Net Present Value Model Specifications at 1 (June 11, 2009), *available at* https://www.hmpadmin.com/portal/programs/docs/ hamp_servicer/npvoverview.pdf.)  If the loan appears to qualify for a modification after application of all of these criteria, the loan may then be placed into a Trial Period Plan ("TPP")—establishing a provisional period during which the borrower makes at least three modified monthly payments.[2]  (*Id.* at 2.)  *See also Williams*, 2009 U.S. Dist. LEXIS 104096, at *8-9 n.3.

For non-Government Sponsored Entities like Chase, participation in HAMP is voluntary. Servicers who choose to participate enter into contracts with the government, known as Servicer Participation Agreements ("SPAs").  (*See* SD 09-01 at 1; Compl. Ex. 1.)

Since HAMP's inception, Treasury has continually refined the program.  To this end, Treasury issued its first Supplemental Directive on April 6, 2009.  It has since issued more than twenty Supplemental Directives, most recently on January 28, 2010.  (SD 10-01, at 1 (Jan. 28, 2010), *available at* https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd1001.pdf.)

Before June 1, 2010, servicers had the option of evaluating an applicant for a TPP based solely upon the applicant's verbal eligibility representations.  After the borrower returned the TPP

---

[2] Plaintiff alleges that Chase offered her three HAMP TPPs.  (Compl. ¶¶ 78, 91, 94, and Exs. 3, 4, 18.)

1   application and required documentation, the servicer then verified and evaluated eligibility for a

2   permanent modification.  (SD 09-01 at 6-7.)  The guidelines mandated that, for a TPP offered on

3   verbal representations, the servicer "must" use verified documentation to confirm eligibility

4   before extending a permanent modification.  (*Id.* at 5-6.)

5          Although reliance on the applicant's initial, verbal representations concerning eligibility

6   allowed servicers to expedite the TPP process, it also resulted in TPPs being extended to some

7   borrowers who were ultimately found ineligible for permanent modifications upon verification of

8   their hardship information or after the NPV analysis.  Treasury later issued a directive requiring

9   "full verification of borrower eligibility prior to offering a trial period plan."  (SD 10-01 at 1.)

10  Borrowers must now submit more initial documentation for a TPP.  (*Id.*)  Plaintiff's initial

11  modification request pre-dated this change.  (*See* Compl. ¶ 60.)

12                  **B.      Prior Litigation to "Enforce" HAMP**

13         This suit is part of a recent wave of actions claiming an entitlement to loan modifications

14  under HAMP.  Treasury has designated Freddie Mac, however, as its exclusive agent in ensuring

15  compliance with HAMP.  (SD 09-01 at 25.)

16         Accordingly, the overwhelming weight of authority holds that a borrower cannot assert a

17  claim under HAMP, even if disguised as a claim for breach of contract:

18              Nowhere in the HAMP Guidelines, nor in the [authorizing statute],
                does it expressly provide for a private right of action[;] compliance
19              authority was delegated solely to Freddie Mac.  By delegating
                compliance authority to [Freddie Mac], Congress intended that a
20              private cause of action was not permitted.

21  *Marks v. Bank of Am., N.A.*, No. 03:10-CV-08039-PHX-JAT, 2010 U.S. Dist. LEXIS 61489, at

22  *16 (D. Ariz. June 21, 2010); *see also Hoffman v. Bank of Am., N.A.*, No. C10-2171 SI, 2010 U.S.

23  Dist. LEXIS 70455, at *14-15 (N.D. Cal. June 30, 2010) (HAMP does not provide a private right

24  of action to sue lenders for breach of SPAs); *Simon v. Bank of Am., N.A.*, No.10-cv-00300-GMN-

25  LRL, 2010 U.S. Dist. LEXIS 63480, at *26-27 (D. Nev. June 23, 2010) (same); *Aleem v. Bank of

26  Am., N.A.*, No. 09-cv-01812-VAP (RZx), 2010 U.S. Dist. LEXIS 11944, at *8-11 (C.D. Cal.

27  Feb. 9, 2010) (same).  Nor is there a private right of action under HAMP's authorizing statute.

28

1    *See, e.g.*, *Gonzalez v. First Franklin Loan Servs.*, No. 1:09-cv-00941 AWI-GSA, 2010 U.S. Dist.

2    LEXIS 1657, at *50 (E.D. Cal. Jan. 9, 2010).

3         The absence of a private right of action to enforce HAMP is no oversight. *See Williams*,

4    2009 U.S. Dist. LEXIS 104096, at *22. HAMP is evolving in the highly charged context of a

5    financial crisis during which homeowners face the prospect of losing their homes. Few banks

6    would agree to participate in HAMP if doing so would expose them to lawsuits by the millions

7    who might seek HAMP modifications. *See Villa v. Wells Fargo Bank, N.A.*, No. 10cv81 DMS

8    (WVG), 2010 U.S. Dist. LEXIS 23741, at *7 n.1 (S.D. Cal. Mar. 15, 2010) (noting that "the

9    breadth and indefiniteness" of putative class supported lack of standing to bring HAMP contract

10   claims).

11        To circumvent the absence of a direct private right of action, various borrowers have

12   brought suits asserting—as plaintiff does here—that they are third-party beneficiaries of the SPA.

13   Federal courts have rejected these attempts. *See, e.g.*, *Hoffman*, 2010 U.S. Dist. LEXIS 70455, at

14   *14 ("[B]orrowers are not third party beneficiaries under the [SPA].").  Notwithstanding

15   plaintiff's effort to distinguish her claim from a direct cause of action under HAMP (Compl.

16   ¶ 170 n.11), her claim should be rejected as well.

17                    **C.    Plaintiff's Complaint**

18        Plaintiff Dianna Montez refinanced her home mortgage loan with Washington Mutual in

19   2005. (Compl. ¶ 50; Chase's Request for Judicial Notice ("RJN") Ex. 1.) The loan was secured

20   by a deed of trust. (RJN Ex. 2.) In 2008, Chase acquired the loan and the servicing rights.

21   (Compl. ¶ 51.) After applying for a loan modification in February 2009, plaintiff defaulted on her

22   payment obligations, beginning with her March 2009 payment. (*Id.* ¶¶ 52, 60, 61, Ex. 7; RJN Ex.

23   3.) Plaintiff allegedly received a series of three TPPs from Chase—the first in July 2009 (Compl.

24   ¶ 78, Ex. 3), the second in September 2009 (*id.* ¶ 91, Ex. 18), and the third in November 2009 (*id.*

25   ¶ 94, Ex. 4). She also received a "Trial Plan Agreement" in February 2010.[3] (*Id.* ¶ 103, Ex. 24.)

26   Plaintiff claims that she made payments under only the last two trial plans. (*See id.* ¶¶ 99, 109.)

27   ─────────────────
        [3] This motion refers to the three TPPs and the "Trial Plan Agreement" collectively as the

28   "trial plans."

                                    4

1    In approximately September 2010, Chase offered plaintiff a permanent loan modification.

2    (*Id.* ¶ 114, Ex. 32.)  Plaintiff alleges that she signed the agreement on October 2, 2010, but that

3    she did so "under duress" (*id.* ¶ 119) because the modification was "clearly unaffordable" (*id.*

4    ¶ 117).  She stopped making mortgage payments altogether in October 2010, but continued to

5    seek a loan modification from Chase.  (*Id.* ¶¶ 120, 121.)  As a result of plaintiff's default on her

6    loan, a notice of trustee's sale was recorded on January 13, 2011, showing an unpaid balance of

7    $499,865.08.  (*Id.* Ex. 10; RJN Ex. 4.)

8    Plaintiff now sues Chase for breach of the four trial plans she received in 2009 and 2010.

9    In addition to asserting a claim as a purported third-party beneficiary of Chase's SPA, plaintiff

10   alleges that merely offering a trial plan creates a contractual entitlement to a permanent loan

11   modification.  This theory drives each of the claims against Chase, which plaintiff brings on

12   behalf of a putative class of California borrowers.  (Compl. ¶ 1.)

13   Plaintiff's core theory is that once she made trial plan payments and sent in the requested

14   documentation, Chase was obligated to offer a permanent loan modification regardless of the

15   content of her documentation and regardless of whether she qualified.  (*See id.* ¶¶ 189-93.)  This

16   theory contradicts the explicit terms of plaintiff's trial plans.  These trial plans emphasize that

17   "the Lender will not be obligated or bound to make any modification of the Loan Documents if

18   the Lender determines that [plaintiff does] not qualify or if [plaintiff fails] to meet any one of the

19   requirements under this Plan," and that "all terms and provisions of the Loan Documents remain

20   in full force and effect[.]"  (*Id.* Ex. 4, at §§ 2.G and 4.D; *see also id.* Ex. 24, at 3 ("If all payments

21   are made as scheduled, [Chase] will reevaluate your application for assistance and determine if

22   [Chase is] able to offer you a permanent workout solution," and "[a]ll of the original terms of

23   your loan remain in full force and effect").)  Plaintiff's theory also ignores the fact that Chase did

24   offer her a permanent modification—apparently just not one that she wanted.  Because plaintiff's

25   legal theories are undercut by the very documents on which the Complaint is based, the claims

26   should be dismissed.

27

28

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts demonstrating a plausible claim for relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  *Twombly* and *Iqbal* require a two-step analysis.  *See Iqbal*, 129 S. Ct. at 1949.  First, a court must consider the factual allegations of the complaint to determine whether the plaintiffs have made a plain statement of the grounds of their entitlement to relief.  Fed. R. Civ. P. 8(a); *Iqbal*, 129 S. Ct. at 1949.  Thus, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949; *see also Grant v. Aurora Loan Servs.*, 736 F. Supp. 2d 1257, 1266 (C.D. Cal. 2010).  Second, if the plaintiffs have alleged sufficient facts to plead the elements of the claim, the court must then consider whether the facts alleged push the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547; *Iqbal*, 129 S. Ct. at 1950; *Grant*, 736 F. Supp. 2d at 1266.

**ARGUMENT**

**I.    PLAINTIFF IS NOT AN INTENDED BENEFICIARY OF THE SPA AND LACKS STANDING TO SUE (COUNT 6).**

Numerous courts have held that borrowers like plaintiff who apply for mortgage loan modifications under HAMP cannot be deemed intended beneficiaries of the SPA with standing to sue.[4]  The reasoning of these decisions is sound and should be adopted here.  To allow a

---

[4] *See, e.g.*, *Morales v. Chase Home Fin. LLC*, No. 10-CV-02068-JSW, 2011 U.S. Dist. LEXIS 49698, at *23-24 (N.D. Cal. Apr. 11, 2011); *Turbeville v. JPMorgan Chase Bank*, No. 10-cv-01464 DOC (JCGx), 2011 U.S. Dist. LEXIS 42290, at *15-17 (C.D. Cal. Apr. 4, 2011); *Grill v. BAC Home Loans Servicing LP*, No. 10-CV-03057 FCD/GGH, 2011 U.S. Dist. LEXIS 3771, at *17-18 (E.D. Cal. Jan. 13, 2011); *Simmons v. Countrywide Home Loans, Inc.*, No. 09cv1245 JAH (JMA), 2010 U.S. Dist. LEXIS 65031, at *15 (S.D. Cal. June 29, 2010); *Marks*, 2010 U.S. Dist. LEXIS 61489, at *16; *Burtzos v. Countrywide Home Loans*, No. 09-cv-2027W (WMc), 2010 U.S. Dist. LEXIS 53509, at *5-6 (S.D. Cal. June 1, 2010); *Hoffman*, 2010 U.S. Dist. LEXIS 70455, at *14; *Escobedo v. Countrywide Home Loans*, No. 09cv1557 BTM(BLM), 2009 U.S. Dist. LEXIS 117017, at *4-7 (S.D. Cal. Dec. 15, 2009); *Villa*, 2010 U.S. Dist. LEXIS 23741, at *6-7; *see also Astra USA, Inc. v. Santa Clara Cnty.*, 131 S. Ct. 1342, 1349 (2011) (holding plaintiff lacked standing to enforce terms of the defendant's agreement with government because agreement was made pursuant to federal program that provided no private right of action, and doing so would undermine "efforts to administer [the program] harmoniously and on a uniform, nationwide basis" and the "risk of conflicting adjudications would be substantial").

1   homeowner to sue as a third-party beneficiary of the SPA would have the same effect as a direct

2   cause of action under HAMP, which the overwhelming weight of authority has rejected.

3          "It is difficult to demonstrate third-party beneficiary status in the context of government

4   contracts." *Villa*, 2010 U.S. Dist. LEXIS 23741, at *5-6.  Because the public often benefits from

5   government contracts, "*parties are generally assumed to be incidental beneficiaries, rather than*

6   *intended beneficiaries.*"  *Id.*, at *6 (emphasis added).  "In order for a third-party to enforce a

7   government contract, there must be a *clear intent* to make the party an *intended* beneficiary."  *Id.*

8   (emphasis added).  "Clear intent is not shown by a contract's recitation of interested

9   constituencies . . . or even a showing that the contract operates to the [third parties'] benefit and

10  was entered into with [them] in mind."  *Id*. (internal quotation marks omitted).  Instead, the

11  contract's precise language "must show a clear intent 'to rebut the presumption that the [third

12  parties] are merely incidental beneficiaries.'"  *Id*. (citation omitted); *see also Beckett v. Air Line*

13  *Pilots Ass'n*, 995 F.2d 280, 288 (D.C. Cir. 1993) (relying on "the basic contract principle that

14  third party beneficiaries of a Government contract are generally assumed to be merely *incidental*

15  beneficiaries, and may not enforce the contract absent clear intent to the contrary") (citing

16  Restatement (Second) of Contracts, § 313(2) & cmt. a); *Bell v. City of Cleveland*, No.

17  1:07cv1476, 2007 U.S. Dist. LEXIS 62566, at *16-17 (N.D. Ohio Aug. 24, 2007) ("To

18  demonstrate standing as a third-party beneficiary to the government contract here, Plaintiffs must

19  show a clear manifestation in the Agreement that [the parties intended] to directly benefit

20  Plaintiffs, and . . . that such third-party beneficiaries could enforce the Agreement . . . .  Plaintiffs

21  are unable to meet this burden.").

22          The SPA at issue here contains no such language.  *See, e.g., Grill*, 2011 U.S. Dist. LEXIS

23  3771, at *16 ("the language of the SPA does not support the conclusion that BAC and Fannie

24  Mae intended to grant qualified borrowers the right to enforce agreement [*sic*]"); *Hoffman*, 2010

25  U.S. Dist. LEXIS 70455, at *11 ("Even though the agreement was made with the benefit of

26  qualified borrowers in mind, the language of the agreement itself does not grant them enforceable

27  rights."); *Escobedo*, 2009 U.S. Dist. LEXIS 117017, at *6; *Villa*, 2010 U.S. Dist. LEXIS 23741,

28

1   at *6; *Marks*, 2010 U.S. Dist. LEXIS 61489, at *12-13 (same); *Morales v. Chase Home Fin. LLC*,

2   No. 10-CV-02068-JSW, 2011 U.S. Dist. LEXIS 49698, at *23-24 (N.D. Cal. Apr. 11, 2011).

3   Far from manifesting a "clear intent" to create enforceable third-party rights, the SPA

4   expressly identifies only the parties to the agreement as the contemplated beneficiaries. (Compl.

5   Ex. 2, ¶ 11(E) (The "Agreement shall inure to the benefit of . . . the *parties* to [it]") (emphasis

6   added).)  The SPA also reflects the parties' intent to limit their exposure to litigation—a crucial

7   inducement to servicer participation in the highly charged circumstances HAMP addresses.  To

8   this end, the SPA establishes a dispute resolution procedure under which the parties must "take all

9   reasonable steps to resolve disputes internally before commencing legal proceedings." (Compl.

10  Ex. 2, ¶ 7.)  "If a dispute cannot be resolved informally by mutual agreement at the lowest

11  possible level, the dispute shall be referred up the respective chain of command of each party in

12  an attempt to resolve the matter." (*Id.*)  The parties noted that it is "in their mutual interest to

13  resolve disputes by agreement." (*Id.*)  This language evidences that borrowers do not have the

14  right to sue under the SPA.

15  Neither Fannie Mae nor servicers would expose themselves to lawsuits by millions of

16  borrowers seeking HAMP modifications with no guarantee the process would succeed in

17  avoiding foreclosure.  This is magnified by the evolving nature of HAMP through Supplemental

18  Directives.  "[T]he breadth and indefiniteness of a class of [would-be] beneficiaries is entitled to

19  some weight in negating the inference of intended beneficiary status." *Villa*, 2010 U.S. Dist.

20  LEXIS 23741, at *7 n.1.  Because government contracts commonly create benefits for the public,

21  any other approach to third-party beneficiary analysis in the government context would flood

22  courts with litigation.  *See Marks*, 2010 U.S. Dist. LEXIS 61489, at *11-12; *Escobedo*, 2009 U.S.

23  Dist. LEXIS 117017, at *5-6.

24  Finally, in ascertaining whether parties intended to confer third-party beneficiary status,

25  courts "ask whether the beneficiary would be reasonable in relying on the promise as manifesting

26  an intention to confer a right on him or her." *Klamath Water Users Protective Ass'n v. Patterson*,

27  204 F.3d 1206, 1211 (9th Cir. 2000) (citing Restatement (Second) Contracts § 302(1)(b) cmt. d

28  (1979)).  As the *Hoffman* court held:

8

1
2
3
4

> [I]t would be unreasonable for a qualified borrower seeking a loan modification to rely on the HAMP servicer's agreement as granting him enforceable rights since the agreement does not actually require that the servicer modify all eligible loans, nor does any of the other language of the contract demonstrate that the borrowers are intended beneficiaries.

2010 U.S. Dist. LEXIS 70455, at *10.

5
6
7
8
9
10
11
12
13
14

The SPA does not require Chase to modify any loans.  *See Marks*, 2010 U.S. Dist. LEXIS 61489, at *4; *Escobedo*, 2009 U.S. Dist. LEXIS 117017, at *6-7.  Instead, like other servicers, Chase retains considerable discretion over which loans it modifies.  *See Williams*, 2009 U.S. Dist. LEXIS 104096, at *19-20 (servicers retain "broad discretion" over the NPV calculation, which drives which loans are modified).  The SPA also expressly recognizes that servicers need not modify loans where they are unable to obtain investor consent.  (Compl. Ex. 1, at 2, ¶ 2(A)-(B).)  Allowing third-party beneficiary claims would deter servicers from entering into SPAs and would undermine HAMP's purpose.  "Even Fannie Mae, which has rights under the Agreement, cannot force a participating servicer to make a particular loan modification.  Fannie Mae . . . cannot impose modification."  *Marks*, 2010 U.S. Dist. LEXIS 61489, at *8 (internal citation omitted).

15
16

Plaintiff is not an intended SPA beneficiary, and thus cannot state a claim for its breach.

17

## II.    PLAINTIFF FAILS TO PLEAD ESSENTIAL ELEMENTS OF A CLAIM FOR BREACH OF A WRITTEN CONTRACT (COUNT 5).

18
19
20
21

The allegation that Chase improperly failed to offer a loan modification lies at the heart of the Complaint.  But plaintiff attaches to the Complaint the very thing she requested—a permanent loan modification offer from Chase, bearing her signature.  Plaintiff's own allegations thus defeat her claim that Chase breached a contract to offer her a permanent loan modification.

22
23
24
25
26
27

Moreover, Plaintiff alleges no such contract with Chase.  An enforceable contract requires, among other things, valid consideration and a meeting of the minds as to the essential terms and conditions by which the parties have agreed to be bound.  *See Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007) (citing Cal. Civ. Code § 1550); *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 213-14 (2006).  Plaintiff alleges neither

28

1    consideration nor the existence of an agreement containing the essential terms for a loan

2    modification.  Thus, she fails to allege the existence of a valid contract.

3        **A.      Chase Offered Plaintiff a Permanent Modification.**

4            Plaintiff cannot maintain her breach of contract claim because Chase offered her a

5    permanent loan modification.  (*See* Compl. ¶¶ 114-15, Ex. 32.)  Plaintiff completely ignores this

6    permanent modification when she alleges that Chase breached the trial plans by "failing to offer

7    Plaintiff . . . permanent loan modifications."  (*Id.* ¶ 193(B).)  Whether the terms of the

8    modification were well-received is beside the point.  Plaintiff received what Chase allegedly

9    promised her.  Thus, plaintiff cannot allege any breach, and her contract claim fails.

10       **B.      The Plain Language of the Trial Plans Does Not Promise a
                    Modification.**

11

12           Furthermore, Plaintiff's trial plans do not promise a permanent loan modification.  Nine

13   federal courts have now dismissed contract claims based on TPPs with similar language, finding

14   no promise of a permanent modification.[5]  While some courts have reached the opposite

15       ───────────────

16           [5] *Morales*, 2011 U.S. Dist. LEXIS 49698, at *11-18; *Wigod*, 2011 U.S. Dist. LEXIS 7314,
     at *20 ("[T]he uniform Trial Period Plan has been interpreted as 'explicitly not being an

17   enforceable offer for loan modification.'"); *Vida v. OneWest Bank, F.S.B.*, No. 10-987, 2010 U.S.
     Dist. LEXIS 132000, at *15 (D. Or. Dec. 13, 2010) ("[T]he Plan states explicitly that

18   modification is not guaranteed until the modification process is complete, and not at any
     intermediate point in the modification process."); *Torres v. Litton Loan Servicing L.P.*, No. 10-cv-

19   01709, 2011 U.S. Dist. LEXIS 4616, at *6 (E.D. Cal. Jan. 18, 2011) (no "binding contract" to
     provide a modification because "[t]he Plan expressly provides that it may be terminated if 'the

20   lender does not provide [Plaintiff] a fully executed copy of the Plan and Modification
     Agreement'"); *Grill*, 2011 U.S. Dist. LEXIS 3771, at *21 ("[T]he plain terms of [the TPP]

21   expressly placed plaintiff on notice that issuance of a loan modification was not guaranteed by
     simply sending in the requested documentation and making trial period payments."); *Prasad v.*

22   *BAC Home Loans Servicing LP*, No. 10-CV-2343, 2010 U.S. Dist. LEXIS 133938, at *12-13
     (E.D. Cal. Dec. 7, 2010) (same); *Brown v. Bank of NY Mellon*, No. 1:10-CV-550, 2011 U.S. Dist.

23   LEXIS 6006, at *8 (W.D. Mich. Jan. 21, 2011) (dismissing contract claim and holding that TPP
     "did not guarantee that Plaintiff's loan documents would be modified"); *Lonberg v. Freddie Mac*,

24   No. 10-6033, 2011 U.S. Dist. LEXIS 23137, at *16-17 (D. Or. March 3, 2011) (noting that "every
     court that has reviewed this issue has unanimously agreed that a defendant's failure to provide a

25   permanent loan modification solely on the basis of the existence of a TPP does not sufficiently
     state a breach of contract claim"); *Bourdelais v. J.P.Morgan Chase Bank, N.A.*, No. 3:10-CV-670,

26   2011 U.S. Dist. LEXIS 35507, at *14 (E.D. Va. Apr. 1, 2011) (dismissing contract claim because

27   "plain language of the TPP Agreement . . . belies [plaintiff's] claim"); *cf. Shurtliff v. Wells Fargo*

28                                                                              (Footnote continues on next page.)

conclusion, *see Turbeville v. JPMorgan Chase Bank*, No. 10-CV-01464, 2011 U.S. Dist. LEXIS 42290, at *8-15 (C.D. Cal. Apr. 4, 2011); *Durmic v. J.P. Morgan Chase Bank, NA*, 10-CV-10380-RGS, 2010 U.S. Dist. LEXIS 123184 (D. Mass. Nov. 24, 2010); *Bosque v. Wells Fargo Bank, N.A.*, No. 10-CV-10311, 2011 U.S. Dist. LEXIS 8509 (D. Mass. Jan. 26, 2011), those decisions are outliers and lack the persuasive weight of the decisions dismissing the contract claims.  *See Bourdelais*, 2011 U.S. Dist. LEXIS 35507, at *19 n.9 (dismissing breach of contract claim and finding *Bosque* and *Durmic* unpersuasive in light of majority of cases supporting dismissal).  This Court should follow the weight of authority, which supports dismissal of plaintiff's contract claim for lack of a promise to permanently modify the loan.

### C.    Plaintiff Does Not Allege Any Other Binding Agreement.

Plaintiff's breach allegations rely solely on the trial plans.  Her references to unnamed "other written agreements" and "other forms" (Compl. ¶¶ 186-188) are vague "labels and conclusions" that do not state a plausible claim under *Twombly* and *Iqbal*.

Furthermore, plaintiff's late-2010 applications for a further loan modification were not binding agreements.  As she concedes, they never proceeded beyond the application stage.  (*See, e.g.*, Compl. ¶ 121.)  Federal courts have repeatedly held that an application for a loan modification lacks all the hallmarks of a binding obligation to modify a loan, or even consider doing so.  *See Prasad*, 2010 U.S. Dist. LEXIS 133938, at *9; *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1197-98 (S.D. Cal. 2010); *Grill*, 2011 U.S. Dist. LEXIS 3771, at *21; *Mizrahi v. Wells Fargo Home Mortg.*, No. 09-cv-1387, 2010 U.S. Dist. LEXIS 59893, at *8 (D. Nev. June 11, 2010).  Thus, plaintiff's references to "other" agreements do not support her contract claim.

---

(Footnote continued from previous page.)

*Bank, N.A.*, No. 1:10-CV-165, 2010 U.S. Dist. LEXIS 117962, at *13 (D. Utah Nov. 5, 2010) (dismissing claim for breach of alleged oral promise to modify because TPP stated that "any modification would be contingent upon further approval").

sf-2984257

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D. The Breach of Contract Claim Fails for Lack of Consideration.

Plaintiff also fails to allege consideration.  Sufficient consideration is an essential element of a valid and enforceable contract.  *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co.*, 520 F. Supp. 2d 1184, 1193 (C.D. Cal. 2007) (citing Cal. Civ. Code § 1550).  There are two requirements to find consideration: (1) the "promisee must confer (or agree to confer) a benefit or must suffer (or agree to suffer) prejudice"; and (2) "the benefit or prejudice must actually be bargained for as the exchange for the promise.  Put another way, the benefit or prejudice must have induced the promisor's promise."  *Steiner v. Thexton*, 48 Cal. 4th 411, 420-421 (2010); *see also Simmons v. Cal. Inst. of Tech.*, 34 Cal. 2d 264, 272-73 (1949).  Here, none of the alleged consideration is bargained-for inducement to Chase.  Plaintiff's partial mortgage payments are not consideration because they were less than she was already obligated to pay.  The acts of applying for a loan modification and forgoing other ways to avoid default also do not constitute bargained-for consideration.  Without sufficient consideration, plaintiff cannot maintain her breach of contract claim.

### 1. Partial Mortgage Payments Are Not Consideration.

Plaintiff alleges that making partial mortgage payments pursuant to a trial plan constitutes consideration.  (Compl. ¶¶ 186, 189.)  But plaintiff already had a legal obligation to make mortgage payments.  (RJN Exs. 1, 2.)  Participating in a trial plan did not relieve plaintiff of that obligation.  (*See, e.g.*, Compl. Exs. 3, 4, 18, 24.)  "[T]he doing or promising to do what one is already bound to do cannot be consideration for a promise."  *Janda v. Madera Cmty. Hosp.*, 16 F. Supp. 2d 1181, 1187 (E.D. Cal. 1998); *see also* Cal. Civ. Code § 1605.  Thus, paying money plaintiff already owed did not constitute valid consideration.

Moreover, the monthly payments plaintiff made to Chase under her trial plans could not have been consideration because the payments were *less* than plaintiff was already obligated to pay.  (*See, e.g.*, Compl. ¶¶ 91, 95, 99, 109.)  A debtor's partial payment on an amount that is indisputably due is not consideration for the creditor's promise to discharge the remainder of the debt.  *See Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, 1038-40 (2010) (no consideration where borrowers promised nothing more than lender was due under original loan); *Blumer v.*

1  *Madden*, 128 Cal. App. 22, 25 (1932) ("Ordinarily where one is legally bound and can be

2  compelled to pay a definite ascertained sum of money . . . a mere promise to pay less than the

3  entire sum in satisfaction thereof, is without consideration and void.").  Plaintiff's mortgage

4  payments therefore are not consideration.

5          **2.**      **Providing Financial Information and Describing Personal**
                 **Circumstances Does Not Constitute Consideration Because the**

6                   **Information Was Part of the Application Process.**

7        Plaintiff alleges that the "documentation of current income, legal representations about

8  current personal circumstances, and other provision[s] of requested information to Defendants by

9  plaintiff and members of the Class constitute consideration."  (Compl. ¶ 190.)  The information

10  provided, however, was part of the application process and not bargained-for consideration.  In

11  dismissing contract claims regarding promises of modification, federal courts have held that

12  "providing the requested documents was simply a part of the application process, which plaintiff

13  was willing to complete in the hope that [the servicer] would modify his loan," and thus was not

14  consideration.  *Prasad*, 2010 U.S. Dist. LEXIS 133938, at *9 (dismissing contract claim based on

15  trial plan); *Grill*, 2011 U.S. Dist. LEXIS 3771, at *10-11 (same); *Mizrahi*, 2010 U.S. Dist. LEXIS

16  59893, at *9-10 ("the parties did not have sufficient consideration" despite the fact that plaintiffs

17  "submitted their financial information as requested").  Plaintiff's submission of information to

18  Chase therefore does not constitute consideration.

19          **3.**        **Plaintiff's Other Acts or Omissions Do Not Constitute**
                  **Consideration.**

20

21        Finally, plaintiff alleges she forwent "other means" of avoiding foreclosure such as

22  bankruptcy remedies or selling or renting her home, and alleges that what she "gave up"

23  constitutes consideration.  (Compl. ¶¶ 189, 195.)  These acts or omissions also do not constitute

24  consideration.  It is axiomatic that consideration refers to acts required by the *contract*.  *See*

25  Restatement (Second) of Contracts § 71 (1981) ("To constitute consideration, a performance or a

26  return promise must be bargained for.").  Moreover, plaintiff's trial plans did not require any of

27  the above-mentioned actions or omissions.  Thus, plaintiff fails to show that she provided any

28  consideration for the supposed contracts she alleges.

1

**E.      Any Alleged Promise to Provide a Permanent Modification Lacked Material Terms.**

2

3      Even if Chase had agreed to modify plaintiff's loan in the future, the alleged promise

4  would be an unenforceable "agreement to agree" because it did not contain the essential terms of

5  the purported permanent modifications, such as the principal, the monthly payment, the

6  applicable interest rate(s), and the loan term.  If the essential terms of a proposed agreement are

7  "only sketched out, with their final form to be agreed upon in the future," what the parties have is

8  not a contract, but rather "an 'agreement to agree,' which is unenforceable under California law."

9  *Bustamante*, 141 Cal. App. 4th at 213; *see also Beck v. Am. Health Grp. Int'l, Inc.*, 211 Cal. App.

10  3d 1555, 1562-63 (1989).

11      The essential terms of a loan agreement are interest rate, monthly payment amount, and

12  maturity date.  *See, e.g.*, *Banco Do Brasil, S.A. v. Latian, Inc.*, 234 Cal. App. 3d 973, 1015 n.55

13  (1991) (holding that bank's alleged offer of credit line would have been "unenforceable

14  agreement to agree" because interest rate, method and schedule of repayment, and maturity dates

15  not stated); *see also Burgess v. Rodom*, 121 Cal. App. 2d 71, 73-74 (1953) (purported loan

16  contract too "uncertain" to be enforceable because missing "important items" such as "rate of

17  interest" and "[h]ow this balance would be paid, whether in monthly, quarterly, semiannual or

18  annual installments, or at the end of a specified term of years"); *Kessler v. Sapp*, 169 Cal. App. 2d

19  818, 823 (1959) (no enforceable loan contract where "rate of interest, the amount of the monthly

20  payments and the period of the debt were left to the future agreement").

21      Here, plaintiff does not allege that any of these key terms were fixed by any of the alleged

22  contracts.  Indeed, the trial plans explicitly leave open key terms such as payment amount,

23  interest, and term.  (*See* Compl. Exs. 3, 4, 18, 24.)  Plaintiff's failure to allege these material

24  terms is fatal to her cause of action for breach of contract.

25  **III.   THERE CAN BE NO BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING BECAUSE PLAINTIFF ALLEGES NO VALID**

26  **CONTRACT (COUNTS 5 AND 6).**

27      Because plaintiff does not allege any contract promising a permanent loan modification,

28  her claims for breach of the covenant of good faith and fair dealing fail.  (*See* Compl. ¶¶ 193,

1  201.)  "To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff

2  must establish the existence of a contractual obligation, along with conduct that frustrates the

3  other party's rights to benefit from the contract."  *Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642

4  F. Supp. 2d 1012, 1021-22 (N.D. Cal. 2009) (citations omitted); *Racine & Laramie, Ltd. v. Dep't*

5  *of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031 (1992) ("The implied covenant of good faith

6  and fair dealing rests upon the existence of some specific contractual obligation."); *see also*

7  *Carma Dev. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 372-73 (1992).  Here, as

8  discussed above, plaintiff does not allege a contract for a permanent loan modification—whether

9  under the SPA, the trial plans, or otherwise.  Her claims for breach of the covenant of good faith

10  and fair dealing therefore must be dismissed.  *See, e.g.*, *Morales*, 2011 U.S. Dist. LEXIS 49698,

11  at *18-19 (dismissing claim for breach of implied covenant because no contract for permanent

12  loan modification existed).

13  **IV.   PLAINTIFF HAS NOT PLED A "CLEAR AND UNAMBIGUOUS"**
**PROMISE OR ANY OF THE OTHER ELEMENTS OF PROMISSORY**
14  **ESTOPPEL (COUNT 7).**

15      Plaintiff also seeks to use a promissory estoppel claim to enforce Chase's alleged

16  agreements to permanently modify her loan.  To state a claim for promissory estoppel, a plaintiff

17  must allege: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance; and

18  (3) detriment resulting from the reliance.  *US Ecology, Inc. v. California*, 129 Cal. App. 4th 887,

19  901-04 (2005); *see also Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d

20  940, 953 (N.D. Cal. 2010).  Here, plaintiff fails to plead any "clear and unambiguous" promises

21  in the trial plans to provide her with permanent loan modifications.  She also fails to show

22  detrimental reliance.  *See Morales*, 2011 U.S. Dist. LEXIS 49698, at *19-23 (rejecting plaintiffs'

23  claim that completing trial period payments and documentation requirements showed detrimental

24  reliance on Chase's alleged promise of permanent modification).

25      **A.   Plaintiff Does Not Plead a "Clear and Unambiguous" Promise in the**
**Trial Plans to Permanently Modify Her Loan.**
26

27      To state a claim for promissory estoppel, a plaintiff must allege a promise that is "clear

28  and unambiguous in its terms."  *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890

15

1   (1976); *see also Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1101 (C.D. Cal.

2   1999) (dismissing promissory estoppel claim because "alleged promises do not have definite

3   terms"); *Locke v. Wells Fargo Home Mortg.*, No. 10-60286, 2010 U.S. Dist. LEXIS 126140, at

4   *12-13 (S.D. Fla. Nov. 30, 2010) (dismissing promissory estoppel claim because final payment

5   and other terms of permanent modification were undetermined).

6        In *Laks*, the plaintiffs obtained a letter of "conditional commitment" from the defendant

7   bank to lend them money to finance a hotel.  60 Cal. App. 3d at 886-87.  When the bank failed to

8   lend them money, the plaintiffs brought suit based on promissory estoppel.  *Id.*  The California

9   Court of Appeal held that the bank's promise was not clear and unambiguous because the letter

10   stated that the offer was "conditional" and did not specify key terms, such as "payment

11   schedules," "terms for interest calculations," and "loan disbursement procedures."  *Id.* at 891.

12   Here, as discussed above, plaintiff's trial plans contain no promise of permanent modification and

13   are missing key terms such as the principal, term, and interest rate.  Without a promise, plaintiff's

14   claim for promissory estoppel fails.  *See Barinaga*, 2010 U.S. Dist. LEXIS 114245, at *25-26

15   (dismissing promissory estoppel claim where plaintiff failed to allege enforceable promise

16   because there was no mention of essential terms of final loan modification).

17          **B.**      **Plaintiff Does Not Adequately Allege Reasonable and Detrimental**
18                  **Reliance.**

19        Plaintiff also fails to adequately allege that any reliance was reasonable or that she

20   suffered detriment as a result.  To state a promissory estoppel claim, a plaintiff must allege

21   reliance that is both foreseeable and reasonable.  *See Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d

22   309, 316 (9th Cir. 1996).  Plaintiff fails to do so here.  Her conclusory allegations of reliance find

23   no support in the language of the trial plans, which emphasize that modification was not

24   guaranteed.  (*See* Compl. Exs. 3, 4, 18, 24.)  *See Bourdelais*, 2011 U.S. Dist. LEXIS 35507, at

25   *14-15 (rejecting breach of contract claim and concluding that "the plain language of the TPP

26   agreement . . . belies" plaintiff's claim that homeowners who execute TPPs and fulfill their

27   documentation and payment requirements are entitled to permanent modification).  Courts have

28   dismissed similar allegations of reliance.  *See Wigod*, 2011 U.S. Dist. LEXIS 7314, at *20 ("in

16

light of the language of the Trial Period Plan as a whole, any reliance [borrower] placed on just the opening sentence was not reasonable"); *Grill*, 2011 U.S. Dist. LEXIS 3771, at *21; *Prasad*, 2010 U.S. Dist. LEXIS 133938, at *12.

Furthermore, plaintiff's allegations of reliance are not reasonable because lenders are not required under HAMP to modify eligible loans.  *See Morales*, 2011 U.S. Dist. LEXIS 49698, at *18 (citing *Marks*, 2010 U.S. Dist. LEXIS 61489, 2010 WL 2572988, at *3). "Even Fannie Mae, which has rights under the [Servicer Participation] Agreement, cannot force a participating servicer to make a particular loan modification." *Id*., at *22 (quoting 2010 U.S. Dist. LEXIS 61489, 2010 WL 2572988, at *3).  "A qualified borrower would not be reasonable in relying on the [SPA] as manifesting an intention to confer a right on him or her because the [SPA] does not *require* that [the participating servicer] modify eligible loans." *Escobedo*, 2009 U.S. Dist. LEXIS 117017, at *6.

Moreover, any reliance was not detrimental.  On the contrary, plaintiff benefited by making reduced mortgage payments while remaining in her home.  With the exception of one wrongly decided case holding that trial plan participation constituted detrimental reliance, the balance of decisions strongly favors a finding of no detrimental reliance.  *See Grill*, 2011 U.S. Dist. LEXIS 3771, at *21-22 (no detriment because "[e]ven if plaintiff had not paid the reduced payments, he would have been obligated to pay the full amount of the mortgage"); *Wigod*, 2011 U.S. Dist. LEXIS 7314, at *25-26 (no detriment where reduced TPP payments "would have left [plaintiff] with more financial resources to pursue other options, rather than fewer resources"); *Prasad*, 2010 U.S. Dist. LEXIS 133938, at *12; *but see Turbeville*, 2011 U.S. Dist. LEXIS 42290, at *17-18 (by participating in trial plan, plaintiffs "lost both time and money in forgoing other opportunities to cure their defaults").  Plaintiff's "providing the requested documents was simply a part of the application process, which [she was] willing to complete in the hope that [the servicer] would modify [her] loan[.]" *Prasad*, 2010 U.S. Dist. LEXIS 133938, at *9 (dismissing contract and promissory estoppel claims based on TPP).  Because plaintiff suffered no legal detriment, her promissory estoppel claim should be dismissed. *See Smith v. City & County of San*

*Francisco*, 225 Cal. App. 3d 38, 48 (1990) (affirming dismissal of promissory estoppel claim for failure to allege detrimental reliance).

### V.   PLAINTIFF'S LOAN CONTRACT BARS THE CLAIM FOR UNJUST ENRICHMENT (COUNT 8).

Plaintiff also claims that Chase was "unjustly enriched" by receiving mortgage payments, including interest, fees, and other charges, "beyond that to which Defendants are or were entitled." (Compl. ¶ 213.) But California law does not recognize a cause of action for "unjust enrichment." *See Javaheri v. JPMorgan Chase Bank, N.A.*, No. CV10-08185 ODW (FFMx), 2011 U.S. Dist. LEXIS 36469, at *9 (C.D. Cal. Mar. 24, 2011); *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("[T]here is no cause of action in California for unjust enrichment. . . . It is synonymous with restitution.").

Moreover, "a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights." *Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001). "When parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." *Id.* (citation omitted); *see also Hardwood v. Bank of Am.*, No. 10-cv-02450, 2010 U.S. Dist. LEXIS 138082, at *8-10 (E.D. Cal. Dec. 17, 2010) (dismissing unjust enrichment claim regarding payments of amounts owed under plaintiffs' mortgage loan).

Here, plaintiff's written agreements with Chase—the promissory note and deed of trust— bar her unjust enrichment theory. The note and deed of trust expressly require plaintiff to pay the mortgage payments, including interest, fees, and charges, that she now says constitute unjust enrichment. (*See* RJN Ex. 1; RJN Ex. 2, ¶¶ 1-4, 12, 18-22.) Accordingly, the unjust enrichment claim should be dismissed.

1

2

3

**VI.     THE CLAIM FOR VIOLATION OF THE ROSENTHAL ACT FAILS BECAUSE PLAINTIFF ALLEGES NO DEBT COLLECTION ACTIVITY AND THE COMMUNICATIONS WERE NOT MISLEADING TO THE LEAST SOPHISTICATED DEBTOR (COUNT 4).**

4

5

6

7

8

9

10

11

12

Plaintiff also asserts a claim under California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq.* ("Rosenthal Act").  The Rosenthal Act requires that debt collectors "collecting or attempting to collect a consumer debt" shall comply with provisions of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*  Plaintiff asserts that Chase violated Section 1692e of the FDCPA, which prohibits misrepresentations made "in connection with its collection of Plaintiff's and the Class's mortgage debt."  (Compl. ¶ 182.)  On the contrary, the alleged misrepresentations were not connected to any debt collection.  Moreover, the alleged communications would not likely mislead the "least sophisticated debtor."

13

**A.     Plaintiff Does Not Allege Debt Collection Activity.**

14

15

16

17

18

19

20

21

22

23

24

25

Plaintiff fails to state a claim because she does not allege that any of the purported misrepresentations occurred "in connection with the collection of any debt" or as part of an "attempt to collect any debt."  Not all of a lender's communications with a borrower are subject to the FDCPA merely because that borrower happens to be delinquent.  *See Walcker v. SN Commercial, LLC*, 286 F. App'x 455, 457 (9th Cir. 2008).  Rather, a plaintiff asserting an FDCPA claim must show that the lender's communication involved a "demand" for payment on the delinquent debt.  *Id.*; *see also Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998) (affirming dismissal of FDCPA claim because letter at issue "does not 'demand' any payment"); *Cole v. Toll*, No. 07-0590, 2007 U.S. Dist. LEXIS 85173, at *14 (E.D. Pa. Nov. 16, 2007) (dismissing FDCPA claim because "[a]t no point does the notice represent that the debt is owed by plaintiffs, indicate that they are required to pay the debt, or request that they remit any payment").

26

27

28

Here, Chase's alleged misconduct has to do with sending trial plan applications, processing trial plan payments, and communicating with plaintiff regarding the trial plans and plaintiff's eligibility for a permanent loan modification.  (*See generally* Compl. ¶¶ 49-145.)

1    Plaintiff does not allege that those acts included any demand for payment of her delinquent debts.

2    Nor do the trial plans themselves include any such statements.  (*See id.* Exs. 3, 4, 18, 24.)

3         Federal courts have repeatedly held that communications regarding potential loan

4    modifications or workout options do not fall under the FDCPA where no demand for payment is

5    made.  In *Walcker*, for example, the loan servicer sent a letter to the borrowers discussing

6    "options for the [borrowers] to pay off their loan."  286 F. App'x at 456.  The Ninth Circuit

7    concluded that such letters were not sent in connection with debt collection because they were

8    "informational," not "demands for payment."  *Id.* at 457 (interpreting FDCPA and applying it by

9    analogy to claim under Washington debt collection law).  Similarly, in *Porter v. Fairbanks*

10   *Capital Corp.*, No. 01 C 9106, 2003 U.S. Dist. LEXIS 8636 (N.D. Ill. May 20, 2003), the court

11   held that a communication that "suggests possible loan workout options" for delinquent debts was

12   not made in connection with debt collection, because it "does not demand payment from

13   plaintiff."  *Id.*, at *7-8 (dismissing FDCPA claim); *see also Gillespie v. Chase Home Fin., LLC*,

14   No. 3:09-CV-191-TS, 2009 U.S. Dist. LEXIS 108837, at *15 (N.D. Ind. Nov. 20, 2009)

15   (dismissing FDCPA claim based on letter describing "options" available to "resolve [borrowers']

16   delinquencies" because, "[a]lthough ensuring payment of the debts cannot be denied as the

17   Defendant's ultimate goal, the letters themselves did not provide terms of payment or deadlines,

18   threaten further collection proceedings, or demand payment in any form"); *but see Morales*, 2011

19   U.S. Dist. LEXIS 49698, at *24-28 (holding that *Walcker* did not apply to TPPs, but dismissing

20   Rosenthal Act claim).  The Court should follow *Walcker* and the line of cases finding that

21   communications regarding loan workout options are not requests for payment and therefore do

22   not support a Rosenthal Act claim.

23           **B.    The Alleged Misrepresentations Would Not Mislead the Least**
                     **Sophisticated Debtor.**
24

25         Even if plaintiff had alleged debt collection activity, she still would not state a Rosenthal

26   Act claim.  To evaluate a Rosenthal Act claim based on a violation of 15 U.S.C. § 1692e, the

27   court must conduct "an objective analysis that takes into account whether 'the least sophisticated

28   debtor would likely be misled by a communication.'"  *Donohue v. Quick Collect, Inc.*, 592 F.3d

sf-2984257

CASE NO 11CV0530 JLW WMC
DEFENDANTS' MPA ISO MOTION TO DISMISS COMPLAINT

1027, 1030 (9th Cir. 2010) (quoting *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th

Cir. 2007) (internal quotation marks omitted)); *see also Morales*, 2011 U.S. Dist. LEXIS 49698,

at *26-28 (dismissing Rosenthal Act claim based on violation of 15 U.S.C. § 1692e where

representations would not mislead "least sophisticated debtor").  Chase's alleged communications

do not meet that standard.

Chase's purported "promise" to offer a permanent loan modification is the central alleged

misrepresentation in the Complaint.  (*See* Compl. ¶ 177.)  As set forth above, however, Chase *did*

offer plaintiff a permanent modification.  In any event, the trial plans contain no such "promise."

(*See, e.g., id.*, Ex. 4 at 4 § 2.G (stating, "this Plan is not a modification," "the Loan Documents

will not be modified unless and until . . . I meet all of the conditions required for modification,"

and "the Lender will not be obligated or bound to make any modification of the Loan Documents

if the Lender determines that I do not qualify or if I fail to meet any one of the requirements under

this Plan").)  *See Gamble*, 2009 U.S. Dist. LEXIS 12214, at *6-7 ("Where an exhibit to a pleading

is inconsistent with the pleading, the exhibit controls.").  As in *Morales*, the communications in

plaintiff's trial plans "do not make false, deceptive or misleading statements that Chase promised

a permanent loan modification if the borrower successfully makes three Trial Period payments."

*Morales*, 2011 U.S. Dist. LEXIS 49698, at *26-27.  Thus, Chase's communications would not

mislead the least sophisticated borrower.  *See id.*  The Rosenthal Act claim should be dismissed.

## VII.   PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (COUNTS 1, 2, AND 3).

Plaintiff also asserts three causes of action under the California Unfair Competition Law,

Cal. Bus. & Prof. Code § 17200 ("UCL").  Each of the alleged bases for the UCL claims,

however, is derivative of plaintiff's breach of contract claims, fails to allege a prohibited conduct

under the UCL, and/or did not cause any alleged loss of money or property to plaintiff, as

required by the UCL.

### A.   Plaintiff's UCL Claims Are Derivative of Her Breach of Contract Claims.

Many of plaintiff's allegations under the UCL are derivative of her contract claims.  She

alleges that Chase engaged in unlawful, unfair, and/or fraudulent conduct by "breaching Chase's

1   agreement with Fannie Mae of which the Plaintiff and class are intended beneficiaries" (Compl.

2   ¶ 165); "breach[ing] direct contracts with Plaintiffs and the proposed Class" (*id.*); "breach[ing]

3   their duties of good faith and fair dealing" (*id.*); "engag[ing] in other common law violations

4   (promissory estoppel and unjust enrichment)" (*id.*); "taking . . . trial payments without the

5   intention of permanently modifying . . . loans" (*id.* ¶ 170); "fail[ing] to grant promised permanent

6   loan modifications" (*id.*); "breach[ing] modification agreements" (*id.*); and promising a

7   permanent loan modification or other permanent workout solution to induce plaintiff to enter into

8   a trial plan (*id.* ¶ 177). All of these allegations rest on the assumption that Chase had a duty under

9   the trial plans to provide a permanent loan modification.

10          Where a UCL claim is based on the "same underlying conduct alleged" in a breach of

11   contract claim, the UCL claim is "wholly derivative" of the contract claim and must be dismissed.

12   *W. L.A. Pizza, Inc. v. Domino's Pizza, Inc.*, No. 2:07-cv-07484-FMC-MANx, 2008 U.S. Dist.

13   LEXIS 45977, at *30 (C.D. Cal. Feb. 26, 2008) (dismissing UCL claim as derivative); *see also*

14   *Morales*, 2011 U.S. Dist. LEXIS 49698, at *28-29 (dismissing UCL claims based on alleged

15   violations of HAMP because HAMP creates no private right of action). Thus, plaintiff's

16   derivative allegations do not state a claim under the UCL.

17                    **B.      Plaintiff Does Not Plead Any "Unlawful" Act.**

18          Plaintiff's UCL claim based on "unlawful" conduct also fails because plaintiff does not

19   allege a predicate violation. To state a UCL claim for "unlawful" business practices, a plaintiff

20   must allege facts to demonstrate that the practice violates an underlying law. *Cel-Tech Commc'ns

21   v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("By proscribing 'any unlawful' business

22   practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices

23   that the unfair competition law makes independently actionable.") (citation omitted); *People v.

24   McKale*, 25 Cal. 3d 626, 635 (1979). "Where a plaintiff cannot state a claim under the borrowed

25   law, she cannot state a UCL claim either." *Rubio v. Capital One Bank (USA), N.A.*, 572 F. Supp.

26   2d 1157, 1168 (C.D. Cal. 2008), *rev'd on other grounds by* 613 F.3d 1195 (9th Cir. 2010).

27          Here, the bases for plaintiff's allegations of unlawful conduct are the five non-UCL causes

28   of action in the Complaint. (Compl. ¶ 165.) Each of these claims fails for the reasons discussed

1    above.  Because plaintiff fails to state a viable "borrowed" claim, she cannot state a claim for

2    unlawful business practices under the UCL.

3           **C.      Plaintiff Does Not Plead Any "Unfair" Act.**

4           Plaintiff also fails to allege a UCL violation based on "unfair" conduct.  Any finding of

5    unfairness must "be tethered to some legislatively declared policy[.]"  *Cel-Tech*, 20 Cal. 4th at

6    186; *see also Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1166 (2000) ("*any* claims of

7    unfairness under the UCL should be defined in connection with a legislatively declared policy").

8    Plaintiff alleges no unfair conduct under the UCL.  (*See* Compl. ¶ 170.)

9           For instance, plaintiff claims that Chase acted unfairly by inviting her to participate in

10   loan modification programs and taking trial payments without intending to permanently modify

11   her loan; failing to grant or failing to take reasonable steps to establish permanent modifications;

12   preventing permanent loan modifications; and breaching modification agreements.  (*Id.*)  This is

13   wrong for the reasons discussed above: Chase *did* offer plaintiff a permanent modification, even

14   though it never promised and had no obligation to offer one.

15          Plaintiff also alleges that Chase failed to keep accurate records of mortgagor accounts and

16   applicants' NPV scores.  (*Id.* ¶ 170.)  Plaintiff alleges no facts connecting these general

17   allegations to her loan.  Accordingly, she does not provide the factual information required to

18   satisfy the federal pleading standard.  *See Twombly*, 550 U.S. at 577 (requiring sufficient

19   specificity in factual allegations to push claims "across the line from conceivable to plausible").

20          Furthermore, plaintiff makes various allegations regarding the charging of interest and

21   fees, the handling of her payments, and adjustments to her debt obligations.  (*See* Compl. ¶ 170

22   (alleging that Chase "charged excessive, unlawful, and unreasonable fees; inexplicably and

23   arbitrarily increased mortgagor debt obligations; failed to properly apply mortgagor payments in

24   whole or in part; rejected payments entirely without justification; [and] caused improper interest

25   and other fees to accrue").)  These allegations fail because plaintiff alleges no actions that were

26   unauthorized by the promissory note or deed of trust.  (*See* RJN Exs. 1, 2.)

27          Plaintiff also alleges that Chase "unlawfully proceeded with foreclosures based on

28   mortgagors' failure to meet impossible and shifting demands."  (Compl. ¶ 170.)  Plaintiff does not

sf-2984257

1  identify which foreclosure proceedings were unlawful or why they were unlawful.  While she

2  alleges that she defaulted on her loan, she provides no facts showing that she defaulted because

3  Chase's "demands" prevented her from making her monthly payments.  (*See, e.g.*, *id.* ¶ 120.)

4  Thus, her conclusory wrongful foreclosure allegation lacks the factual enhancement necessary to

5  state a claim.  *See Iqbal*, 129 S. Ct. at 1949.

6         In sum, plaintiff fails to state a UCL claim based on unfair business practices.

7              **D.       Plaintiff Does Not Plead Any "Fraudulent" Act.**

8         Plaintiff's UCL claim based on "fraudulent" conduct also fails.  A business practice is

9  considered "fraudulent" within the meaning of Section 17200 if the "public is likely to be

10  deceived." *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1290 (2002).  "The

11  determination as to whether a business practice is deceptive is based on the likely effect such

12  practice would have on a reasonable consumer." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th

13  1457, 1471 (2006) (internal citations omitted).

14         The core of plaintiff's fraudulent business practices claim is the allegation that Chase

15  invited her to participate in a trial plan by promising a permanent modification.  (*See* Compl.

16  ¶ 177.)  As set forth above, however, the trial plans made no such promise.  Moreover, even if the

17  trial plans did promise a modification, Chase offered plaintiff one—apparently just not one that

18  she wanted.  Plaintiff therefore fails to state a claim for fraudulent business practices under the

19  UCL.  *See Morales*, 2011 U.S. Dist. LEXIS 49698, at *29 (dismissing UCL claim because "the

20  TPP Contract makes no promise of permanent modification").

21              **E.       Plaintiff Lacks Standing to Assert a UCL Claim.**

22         Plaintiff also lacks standing to bring a UCL claim because she fails to allege cognizable

23  damages caused by Chase's conduct.  *See* Cal. Bus. &. Prof. Code § 17204.  To have standing to

24  assert a UCL claim, a plaintiff must have "lost money or property" as a result of the alleged

25  unlawful acts.  *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1591 (2008); *Animal Legal*

26  *Def. Fund v. Mendes*, 160 Cal. App. 4th 136, 147 (2008) ("This language discloses a clear

27  requirement that injury must be economic, at least in part, for a plaintiff to have standing under

28  § 17204."); *see also Palmer v. Stassinos*, 348 F. Supp. 2d 1070, 1088-89 (N.D. Cal. 2004)

1   (dismissing UCL claim for failure to properly allege standing).

2           Plaintiff alleges that she lost money in the form of monthly mortgage payments to Chase.

3   (Compl. ¶¶ 3, 166, 173, 179.)  As set forth above, however, plaintiff already had a contractual

4   obligation to make these payments under her promissory note and deed of trust.  (*See* RJN Exs. 1,

5   2.)  These payments were not made "as a result" of Chase's alleged unlawful, unfair, or

6   fraudulent conduct.

7           Furthermore, the payments did not constitute a loss of money or property.  Plaintiff does

8   not allege that she paid more than she owed.  Nor does she explain how payments of less than the

9   amount she owed could constitute a cognizable loss to her.  Because payments of amounts

10  already owed are not damages under the UCL, plaintiff's three UCL claims should be dismissed.

11  *See Hardwood*, 2010 U.S. Dist. LEXIS 138082, at *7-8 (dismissing UCL claim where alleged

12  loss was payments of amounts owed under mortgage loan); *DeLeon v. Wells Fargo Bank, N.A.*,

13  No. 10-CV-01390, 2011 U.S. Dist. LEXIS 8296, at *19-20 (N.D. Cal. Jan. 28, 2011) (dismissing

14  UCL claim based on allegation that bank "lulled Plaintiffs into concentrating their efforts on

15  completion of the loan modification process"); *Dooms v. Fed. Home Loan Mortg. Corp*, No. CV

16  F 11-0352 LJO DLB, 2011 U.S. Dist. LEXIS 38550, at *28-35 (E.D. Cal. Mar. 31, 2011).

17                                    **CONCLUSION**

18          For the foregoing reasons, defendants respectfully request that the Court grant their

19  motion to dismiss the Complaint without leave to amend.

20  Dated:       May 13, 2011                 MORRISON & FOERSTER LLP

21

22                                    By:   /s/ Gregory P. Dresser

23                                          Gregory P. Dresser

24                                          Attorneys for Defendants
                                            JPMORGAN CHASE BANK, N.A. and
25                                          JPMORGAN CHASE BANK, N.A., as
                                            successor by merger to CHASE HOME
26                                          FINANCE LLC

27

28