UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DIANNA MONTEZ,

                              Plaintiff,

v.

CHASE HOME FINANCE LLC, and
JPMORGAN CHASE, N.A.,

                              Defendants.

Case No.: 11-CV-530 JLS (WMC)

**ORDER GRANTING DEFENDANT
JPMORGAN CHASE BANK, N.A.'S
REQUEST FOR JUDICIAL NOTICE
AND MOTION TO DISMISS**

(ECF Nos. 56, 57)

Presently before the Court is Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). ("MTD," ECF No. 56.) Also before the Court are Defendant's Request for Judicial Notice ("RJN") in Support of (ECF No. 57), Plaintiff Dianna Montez's Opposition to (ECF No. 63), and Defendant's Reply in Support of (ECF No. 65) the MTD. The Court vacated the hearing scheduled for September 17, 2015, and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 66.) Having considered the parties' arguments and the law, the Court **GRANTS** Defendant's RJN and MTD.

## BACKGROUND

In 2005, Washington Mutual Bank, N.A. ("WaMu") approached Plaintiff with an offer to refinance her home mortgage loan. (Second Am. Comp. ("SAC") ¶ 13, ECF No. 53.) On July 8, 2005, Plaintiff obtained a $450,000 loan secured by a deed of trust

1

encumbering real property located at 13494 Chelan Court, San Diego, CA 92129 (the "Property"). (RJN Ex. 1, ECF No. 57-1; RJN Ex. 2, ECF No. 57-2.)

In early February 2009, Plaintiff attempted to obtain a loan modification from Defendant (SAC ¶ 23, ECF No. 53), which had acquired the servicing rights to Plaintiff's mortgage loan in fall 2008 (*id.* at ¶ 14). Although current on her loan payments through February 2009 (*id.* at ¶ 16), Plaintiff stopped her pending March 2009 mortgage payment to Defendant, believing that the loan modification was imminent (*id.* at ¶ 24). On March 30, 2009, Plaintiff contacted Defendant to follow up on her modification application, but Defendant's employee "Jackie" informed her that Defendant "could not locate her documents" because "things were disorganized due to the transition from WaMu to [Defendant]." (*Id.* at ¶ 25.)

In April 2009, Plaintiff again followed up with Defendant, which again informed her that her paperwork had been lost. (*Id.* at ¶ 27.) Defendant's employee "Vickie" told Plaintiff that "to obtain a modification, she would have t[o] fall behind on her payments so that she would 'move up on the list to get help.'" (*Id.*) Plaintiff continued to pursue the modification through May and June 2009, and, "[a]s directed in her April 2009 conversations with [Defendant's] employees, [Plaintiff] did not make her monthly mortgage payments during this time period." (*Id.* at ¶ 28.)

On June 6, 2009, Plaintiff received a Notice of Collection Activity from WaMu informing her that she had failed to make payments on her mortgage. (*Id.* at ¶ 29.) Plaintiff called Defendant on that date (*id.* at ¶ 30), and spoke with Defendant's employees "Rachel" and "Tamitha" on June 10 and 11, 2009, respectively, both of whom informed Plaintiff that her modification application was in process (*id.* at ¶¶ 31–32).

On June 15, 2009, Plaintiff received a letter from Defendant stating that Defendant was cancelling Plaintiff's request for a loan workout and that Defendant would be "continu[ing] with the normal default servicing activities commenced on [Plaintiff's] loan before [Plaintiff's] workout request was submitted." (*Id.* at ¶ 33 (internal quotation marks omitted).) The letter also indicated that Defendant had told a credit bureau about Plaintiff's

"late payment . . . or other default" and that Defendant was acting as a "debt collector." (*Id.*)  When Plaintiff called Defendant, Defendant's employee "Phillip" assured her that the letter was a mistake.  (*Id.* at ¶ 34.)

On July 2, 2009, Plaintiff spoke to another of Defendant's representatives, "Mary Ela," who informed Plaintiff that her paperwork was in order, the letter had been a mistake, and that she would "escalate" the modification process.  (*Id.* at ¶ 36.)  Nevertheless, California Reconveyance Company sent Plaintiff a "Notice of Default and Election to Sell Under Deed of Trust" indicating that Plaintiff owed $8,464.29 as of July 13, 2009.  (*Id.* at ¶ 38.)  Defendant also sent Plaintiff a letter on July 15, 2009 requesting additional information, including her tax return and more paystubs.  (*Id.* at ¶ 39.)  On July 21, 2009, Plaintiff spoke to a representative from Defendant's Home Lending Executive Office, Sharon Cannon, who informed Plaintiff that she would investigate why Plaintiff's modification application was being delayed.  (*Id.* at ¶ 40.)

Shortly thereafter, Plaintiff received her first "Trial Period Plan" ("TPP"), which required three monthly payments of $2,325.00—$25 per month more than Plaintiff was required to pay under her 2005 loan from WaMu—on August 1, September 1, and October 1, 2009.  (*Id.* at ¶¶ 41, 48.)  Plaintiff contacted Defendant, and Defendant's employee "Candice" instructed Plaintiff to decline the July 2009 TPP.  (*Id.* at ¶ 48.)  Consequently on July 25, 2009, Plaintiff signed and wrote "This option is not affordable" on the July 2009 TPP.  (*Id.* (internal quotation marks omitted).)

On August 13, 2009, Plaintiff again contacted Defendant, whose employee Christy Sullivan again advised Plaintiff to decline the July 2009 TPP.  (*Id.* at ¶ 50.)  In late August 2009, Defendant's employee Deanine Picarello informed Plaintiff that she would have to let the 90-day trial period under the July 2009 TPP "lapse before [Defendant] would consider any other loan options."  (*Id.* at ¶ 51 (internal quotation marks omitted).)  Ms. Picarello also conveyed a "warning" from Plaintiff's negotiator that if Plaintiff failed to make the $2,325.00 payments required under the July 2009 TPP, she would not be eligible for a modification.  (*Id.*)  At this time, Plaintiff also began receiving "harassing" daily

phone calls from Defendant's "specialists." (*Id.* at ¶ 52.)

Plaintiff received her second TPP in September 2009, which required three payments of $2,170 to be paid on October 1, November 1, and December 1, 2009. (*Id.* at ¶ 55.) Because the new payment was only $130 per month less than her original payment (*id.*), Plaintiff contacted Ms. Cannon, who told Plaintiff to decline the offer and that Plaintiff's foreclosure had been "suspended" (*id.* at ¶ 57 (internal quotation marks omitted)).

In November 2009, Plaintiff received her third TPP (*id.* at ¶ 58), which required three payments of $1,612.00 beginning on December 1, 2009 (*id.* at ¶ 59). Ms. Cannon again instructed Plaintiff not to make the payments. (*Id.*)

On November 20, 2009, Defendant sent Plaintiff a letter informing her that "Your Making Home Affordable Modification Trial Plan is at Risk" (*id.* at ¶ 60), and on December 28, 2009, Plaintiff received a "Notice of Expiration" from Defendant indicating that her trial plan had expired for failure to make the required trial payments (*id.* at ¶ 61). Plaintiff immediately contacted Ms. Cannon, who informed Plaintiff that the previous instruction not to pay the TPP payments had been "incorrect." (*Id.* at ¶ 62.) Ms. Cannon told Plaintiff to "ignore" the notice and that it was not too late for Plaintiff to begin making payments under the November 2009 TPP. (*Id.*) Consequently, Plaintiff made payments of $1,612.00 on December 28, 2009 and January 7, 2010. (*Id.* at ¶ 63.)

On January 19, 2010, Plaintiff found a Notice of Trustee sale taped to her door, informing her a foreclosure sale would occur on February 9, 2010. (*Id.* at ¶ 65.) Plaintiff again immediately contacted Ms. Cannon, who informed Plaintiff that the foreclosure would be "'suspended' as long as she was actively pursuing a modification." (*Id.* at ¶ 66.) Over the next week, Plaintiff spoke with three more of Defendant's employees, each of whom assured her that she was "in review for a modification, not foreclosure." (*Id.*)

On January 23, 2010, Plaintiff received a fourth plan, a "Trial Plan Agreement," which required three monthly payments of $1,554.36 beginning on March 1, 2010. (*Id.* at ¶ 67.) The Trial Plan Agreement indicated that foreclosure activity would "resume" if the payments were not made on time and that, "[i]f all payments [we]re made as scheduled,

[Defendant] *w[ould]* reevaluate [Plaintiff's] application for assistance and determine if [Defendant would be] able to offer [Plaintiff] a permanent workout solution to bring [her] loan current." (*Id.* (first alteration and emphasis in original).)

Plaintiff received a letter dated January 28, 2010 indicating that her modification was at risk but that she could maintain eligibility by submitting two more payments of $1,612.00. (*Id.* at ¶ 68.) Plaintiff contacted Defendant to confirm that she should pay on the newer Trial Plan Agreement instead of the November 2009 TPP. (*Id.* at ¶ 70.)

On February 3, 2010, Ms. Cannon emailed Plaintiff that the foreclosure sale had been suspended. (*Id.* at ¶ 71.) Plaintiff signed the Trial Plan Agreement on February 8, 2010 and faxed it to Defendant on February 10, 2010. (*Id.* at ¶ 72.) Plaintiff made the three initial payments required by the Trial Plan Agreement and continued to make payments of $1,554.36 for seven months. (*Id.* at ¶ 73.) During this period, Plaintiff contacted Defendant "frequently" to inquire about the status of her modification. (*Id.*)

In late September 2010, Plaintiff received a "Load Modification Agreement" from Defendant effective November 1, 2010. (*Id.* at ¶ 78.) The agreement specified a new principal balance of $497,789.47, an interest rate of 4.375%, a balloon payment of $290,188.86 due August 1, 2035, and monthly principal and interest payments of $2,201.43. (*Id.* at ¶ 79.) Plaintiff called Defendant's mortgage division, which informed her that she could accept or reject the agreement, or sell her house. (*Id.* at ¶ 83.) Fearing that she would lose her home, Plaintiff signed the agreement "under duress" on October 2, 2010 and returned the agreement to Defendant. (*Id.* at ¶ 84 (internal quotation marks omitted).) Plaintiff stopped making payments in October 2010 (*id.* at ¶ 85), although she "continued to pursue a reasonable modification" (*id.* at ¶ 86).

In January through March 2011, Plaintiff faced threats of foreclosure and "continual" requests for documentation. (*Id.* at ¶ 89.) Plaintiff managed to have the foreclosure sale postponed from February 3, 2011 to March 21, 2011. (*Id.* at ¶ 94.) Although Defendant's employees repeatedly informed Plaintiff between March 15 and 17, 2011 that her foreclosure sale had been postponed (*id.* at ¶¶ 100–01), the sale remained on

calendar until March 17, 2011 when Plaintiff filed her initial complaint (*id.* at ¶ 101; *see also* ECF No. 1).

After Defendant filed a motion to dismiss on May 13, 2011 (ECF No. 12), Plaintiff filed a first amended complaint ("FAC") on June 2, 2011 (ECF No. 15), mooting Defendant's first motion to dismiss (ECF No. 16). Soon after Defendant filed a second motion to dismiss on July 14, 2011 (ECF No. 30), this case was transferred to the District of Massachusetts pursuant to an order of the Judicial Panel on Multidistrict Litigation (ECF No. 35). On September 18, 2014, Plaintiff's individual claims were remanded to this Court. (ECF No. 38.) Following a status hearing (ECF No. 49), Plaintiff filed her SAC on April 1, 2015 (ECF No. 53). Defendant filed the instant MTD on June 12, 2015. (ECF No. 56.)

## REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201(b) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Judicially noticed facts often consist of matters of public record, such as prior court proceedings . . . or other court documents." *Botelho v. U.S. Bank, N.A.*, 692 F. Supp. 2d 1174, 1178 (N.D. Cal. 2010) (citation omitted); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("[The court] may take judicial notice of court filings and other matters of public record."). While "[a] court may take judicial notice of the existence of matters of public record, such as a prior order or decision," it should not take notice of "the truth of the facts cited therein." *Marsh v. San Diego Cnty.*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006).

In support of its MTD, Defendant asks the Court to take judicial notice of five documents: (1) Adjustable Rate Note executed by Dianna Montez (July 8, 2005) (RJN Ex. 1, ECF No. 57-1); (2) Deed of Trust, No. 2005-0601502 (San Diego Cnty. Recorder's Office July 15, 2005) (RJN Ex. 2, ECF No. 57-2); (3) Notice of Default, No. 2009-0384842 (San Diego Cnty. Recorder's Office July 14, 2009) (RJN Ex. 3, ECF No. 57-3); (4) Notice

of Trustee's Sale, No. 2011-0023710 (San Diego Cnty. Recorder's Office Jan. 13, 2011) (RJN Ex. 4, ECF No. 57-4); and (5) Preliminary Approval Order, *In re JPMorgan Chase Mortg. Modification Litig.*, No. 11-md-02290-RGS (D. Mass. Dec. 6, 2013), ECF No. 396 (RJN Ex. 5, ECF No. 57-5).  Plaintiff does not oppose the RJN.

Here, because the Note and Deed of Trust are referenced throughout Plaintiff's SAC (*see generally* SAC, ECF No. 53), the Court may judicially notice those documents.  *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1199 (9th Cir. 2010) (considering on de novo review of Rule 12(b)(6) dismissal a cardholder agreement submitted by defendant "whose contents are alleged in [the] complaint and whose authenticity no party questions") (alteration in original) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)) (internal quotation marks omitted).  The Deed of Trust, Notice of Default, and Notice of Trustee's Sale are publicly recorded with the San Diego County Recorder's Office, and therefore may properly be judicially noticed.  *See Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1039 (E.D. Cal. 2009) (judicially noticing on Rule 12(b)(6) motion publically recorded Deed of Trust, Notice of Default, and Notice of Trustee's Sale).  Finally, the Preliminary Approval Order, as another court's filing, is also a proper subject of judicial notice.  *See Reyn's Pasta Bella*, 442 F.3d at 746 n.6.

Consequently, the Court **GRANTS** Defendant's RJN (ECF No. 57), and may consider the exhibits to Defendant's RJN without converting Defendant's MTD into a motion for summary judgment, *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## MOTION TO DISMISS

## I.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil

Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."   Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original).   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).   A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).   "[F]acts that are 'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).   Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* at 678–79 (citing *Twombly*, 550 U.S. at 555).   This review requires "context-specific" analysis involving the Court's "judicial experience and common sense." *Id.* at 679.   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).   The Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## II.     Analysis

Plaintiff asserts eight causes of action in her SAC: (1) Unlawful Business Practices in Violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (2) Unfair Business Practices in Violation of the UCL; (3) Fraudulent Business Practices in Violation of the UCL; (4) Unfair Debt Collection Practices in Violation of Cal. Civ. Code §§ 1788 *et seq.* (the "Rosenthal Act"); (5) Violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (6) Breach of Contract/Breach of the Duty of Good Faith and Fair Dealing; (7) Promissory Estoppel; and (8) Unjust Enrichment.  (*See generally* SAC, ECF No. 53.)  Defendant moves to dismiss Plaintiff's entire SAC with prejudice.  (*See generally* MTD, ECF No. 56.)  The Court addresses each of Plaintiff's causes of action below.

### A.     Cause of Action 4: Violation of the Rosenthal Act

The Rosenthal Act is intended "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts . . . ."  Cal Civ. Code § 1788.1.  "To establish a violation of . . . the Rosenthal Act, Plaintiff[] must allege: (1) [she] w[as a] consumer[] (2) who w[as] the object of a collection activity arising from a consumer debt, and (3) the defendant is a 'debt collector,' (4) who engaged in an act or omission prohibited by the . . . Rosenthal Act."  *Lazo v. Summit Mgmt. Co., LLC*, No. 1:13-CV-02015-AWI-JL, 2014 WL 3362289, at *16 (E.D. Cal. July 9, 2014) (citing *Miranda v. Law Office of D. Scott Carruthers*, No. 1:10-cv-01487 OWW SMS, 2011 WL 2037556, at *4 (E.D. Cal. May 23, 2011)), *adopted*, 2014 WL 3689695 (E.D. Cal. July 24, 2014).  The Rosenthal Act defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection."  Cal. Civ. Code § 1788.2(c).  "Debt" is "money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person."  Cal. Civ. Code § 1788.2(d).  To evaluate a cause of action under the Rosenthal Act, the Court must consider whether "the least sophisticated debtor would 'likely be misled' by a communication from a debt

9

collector." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007). "The 'least sophisticated debtor' standard is an objective one." *Morales v. Chase Home Fin. LLC*, No. C 10-02068 JSW, 2011 WL 1670045, at *10 (N.D. Cal. Apr. 11, 2011) (citing *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1989)).

Defendant claims that Plaintiff's fourth cause of action must be dismissed because "mortgage loans are not covered by the Rosenthal Act" (MTD Mem. 22,[1] ECF No. 56-1) (citing *Pittman v. Barclays Capital Real Estate, Inc.*, No. 09 CV 0241, 2009 U.S. Dist. LEXIS 34885, at *11 (S.D. Cal. Apr. 24, 2009))), and Defendant's communications "do not make false, deceptive, or misleading statements that [Defendant] promised a permanent loan modification" (*id.* at 23 (quoting *Morales*, 2011 U.S. Dist. LEXIS 49698, at *26–27) (internal quotation marks omitted)).

Plaintiff counters that "*Pittman* . . . do[es] not hold that a mortgage is not a debt," and that "it was unclear to [the *Pittman*] court if there was an actual debt that could be paid off." (Opp'n 5, ECF No. 63.)  Plaintiff notes that in this case, on the other hand, "[i]t cannot be disputed that a debt is owed and that [Defendant] has been attempting to collect on that debt."[2]  (*Id.*)  "Furthermore, [Defendant]'s statement that the language on the TPP was clear and unambiguous is self-serving and without any support." (*Id.*)

The Court must reject Defendant's first argument that mortgage loans are not debt covered by the Rosenthal Act.  (*See* MTD Mem. 22, ECF No. 56-1.)  Other courts have found that "such a bright-line rule belies a plain reading of the statute." *Gross v. Wells Fargo Bank,* No. 13-cv-1250-W(BGS), 2014 WL 232272, at *3 (S.D. Cal. Jan. 21, 2014); *see also Guccione v. JPMorgan Chase Bank, N.A.*, No. 3:14-CV-04587 LB, 2015 WL

---

[1] All citations to docketed materials refer to the CM/ECF page number stamped at the top of the page.

[2] The Court notes that Plaintiff's arguments are largely unsupported by any legal authority.  Plaintiff's counsel is cautioned that the failure to meaningfully oppose a motion to dismiss by citing legal authorities may allow the Court to dismiss Plaintiff's complaint with prejudice. *See, e.g.*, *Cigarettes Cheaper! v. State Bd. of Equalization*, No. 2:11-CV-00631-JAM, 2011 WL 2560214, at *2 (E.D. Cal. June 28, 2011) (citing *Allen v. Dollar Tree Stores, Inc.*, No. C 10-4492 WHA, 2011 WL 198148, at *1 (N.D. Cal. Jan. 20, 2011)).

1968114, at *14 (N.D. Cal. May 1, 2015) ("The court . . . rejects [defendant]'s argument that a mortgage loan cannot constitute a debt under the [Rosenthal Act]."); *Tirabassi v. Chase Home Fin., LLC*, No. CV 14-08790 BRO SSX, 2015 WL 1402016, at *10 (C.D. Cal. Mar. 24, 2015) ("[R]esidential mortgage loans are not categorically excluded from the Rosenthal Act.") (citing *Lopez v. A.M. Solutions, LLC*, No. CV-13-01689 SVW, 2014 WL 1272773, at *3 (C.D. Cal. Mar. 3, 2014); *Walters v. Fidelity Mortg. of Cal., Inc.*, 730 F. Supp. 2d 1185, 1203 (E.D. Cal. 2010)).

The Court agrees with Defendant, however, that Plaintiff has not demonstrated that Defendant made false, deceptive, or misleading statements. (*See* MTD Mem. 23, ECF No. 56-1.) The crux of Plaintiff's cause of action is that "Defendants invited Plaintiff to participate in a loan modification program, promising that if Plaintiff complied with the terms of the various payment plans and otherwise qualified, [Defendant] would permanently modify their loan or make available an alternative 'permanent workout solution,' enabling her to avoid foreclosure." (SAC ¶ 142, ECF No. 53.) Plaintiff acknowledges that she rejected the first and second TPPs (*id.* at ¶¶ 48, 57) and failed to make the third payment required under the third TPP (*id.* at ¶¶ 63, 69). After Plaintiff made the required payments under the fourth Trial Plan Agreement (*id.* at ¶ 73), Defendant sent Plaintiff a permanent Loan Modification Agreement (*id.* at ¶ 78), which Plaintiff executed and returned to Defendant (*id.* at ¶ 84). Consequently, once Plaintiff did comply with the terms of a payment plan, Defendant offered her a permanent loan modification. (*See* MTD Mem. 23, ECF No. 56-1 (quoting *Morales*, 2011 U.S. Dist. LEXIS 49698, at 26–27).) Although Plaintiff hints at times that it was "standard" for Home Affordable Modification Program ("HAMP") modifications to require TPP payments of 31% of the applicant's income (*see, e.g.*, SAC ¶¶ 48, 57, 59, ECF No. 53), Plaintiff nowhere alleges that Defendant promised *her* TPP payments or a permanent modification on those terms.

Because "Plaintiff[] ha[s] not demonstrated that the TPP Contract or other modification-related communications were false, deceptive or misleading" *Morales*, 2011 WL 1670045, at *10 (citing *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th

Cir.1996)), the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's fourth cause of action.

### B.    Cause of Action 6: Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citing *Reichert v. Gen. Ins. Co.*, 68 Cal. 2d 822, 830 (1968)). Additionally, "[u]nder California law, every contract 'imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (quoting *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 796 (2008)). "The covenant 'is based on general contract law and the long-standing rule that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" *Id.* (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995)).

> In California, the factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct.

*Id.* (citing Judicial Council of California Civil Jury Instruction 325).

The Court agrees with Defendant that Plaintiff has not pleaded a claim for breach of contract or breach of the covenant of good faith and fair dealing because Plaintiff has failed to adequately plead performance or excuse for nonperformance. (*See* MTD Mem. 25–26, ECF No. 56-1.) Plaintiff appears to concede as much in her Opposition. (*See* Opp'n 4, ECF No. 63 ("[T]he elements of offer, acceptance, consideration and Plaintiff's reliance upon the same have been adequately pled with specificity."); *see also* Reply 6, ECF No.

65 (citing Opp'n 4, ECF No. 63).)  Plaintiff alleges that she formed "a valid contract with Defendants," one term of which was that "Plaintiff would continue making mortgage payments as directed."  (SAC ¶ 174, ECF No. 53.)  But Plaintiff defaulted on the original Deed of Trust when she stopped her March 2009 mortgage payment.  (*Id.* at ¶ 24.)  Plaintiff rejected both the July 2009 and September 2009 TPPs and never made a single payment under either agreement.  (*Id.* at ¶¶ 48, 57.)  Plaintiff made only two of the three required payments under the November 2009 TPP.  (*Id.* at ¶¶ 63, 69.)  Plaintiff did make the three payments required under the final Trial Plan Agreement she received on January 23, 2010 (*id.* at ¶¶ 67, 73), and was consequently offered a permanent Loan Modification Agreement dated September 22, 2010 (*id.* at ¶¶ 78–79).  Although Plaintiff signed the agreement (*id.* at ¶ 84), which became effective November 1, 2010 (*id.* at ¶ 78), Plaintiff never made a payment under the permanent Loan Modification Agreement (*id.* at ¶ 85).

Plaintiff conclusorily alleges that she "signed the [permanent loan modification] agreement on October 2, 2010 . . . 'under duress'" (*id.* at ¶ 84), but the Court need not accept as true such legal conclusions on a motion to dismiss, *see Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's cause of action for breach of contract and breach of the duty of good faith and fair dealing.

### C.    Causes of Action 5, 7, and 8

Plaintiff's Opposition fails to address Defendant's arguments concerning dismissal of causes of action five, seven, and eight.  (*See generally* Opp'n, ECF No. 63; *see also* Reply 3–4, ECF No. 65.[3])  Under Ninth Circuit precedent, the Court may therefore dismiss

---

[3] Although Defendant argues that Plaintiff also fails to oppose dismissal of her sixth cause of action for breach of contract and the duty of good faith and fair dealing (*see* Reply 3, ECF No. 65), the Court notes that Plaintiff's Opposition argues that "Plaintiff has properly pled the necessary elements of her claims and her UCL claims are based on her valid breach of contract allegations" (Opp'n 3–4, ECF No. 63). Plaintiff goes on to specify that "the elements of offer, acceptance, consideration and Plaintiff's reliance upon the same have been adequately pled with specificity" and "[t]he TPP's were enforceable promises in contradiction to Defendants' claim and Plaintiff has met her burden of pleading the same." (*Id.* at 4.)

Plaintiff's fifth, seventh, and eighth causes of action as abandoned. *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (dismissing causes of action as abandoned where plaintiff did not oppose dismissal in her opposition); *Shull v. Ocwen Loan Servicing, LLC*, No. 13-CV-299 BEN (WVG), 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014) ("Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate."); *see also Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (holding that plaintiff forfeited his right to raise an issue on appeal where his opposition to a motion to dismiss failed to address the arguments because plaintiff failed to suggest a continuing interest in pursuing the claim and "effectively abandoned" it). Moreover, the Court may dismiss these causes of action with prejudice. *See, e.g.*, *Qureshi v. Countrywide Home Loans, Inc.*, No. 09–4198, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010) (citing *Jenkins*, 398 F.3d at 1095 n.4); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1131 (N.D. Cal. 2008). Nevertheless, the Court will review causes of action five, seven, and eight on the merits.

### (i)   Cause of Action 5: Violation of the CLRA

The CLRA "prohibits specified unfair and deceptive acts and practices in a 'transaction intended to result or which results in the sale or lease of goods or services to any consumer.'" *Fairbanks v. Super. Ct.*, 46 Cal. 4th 56, 59 (2009) (quoting Cal. Civ. Code § 1770(a)). The CLRA defines "goods" as "tangible chattels bought or leased," and "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(a), (b).

Plaintiff alleges that "Defendants' loan modification programs are goods and/or services within the meaning of Civil Code § 1761(a) and (b), respectively." (SAC ¶ 149, ECF No. 53.) Defendant argues that Plaintiff's fifth cause of action must be dismissed because, "[a]s the California Supreme Court explained, the CLRA does not cover ancillary services associated with mortgage loans." (MTD Mem. 23–24, ECF No. 56-1 (citing

*Fairbanks*, 46 Cal. 4th at 65).)

"There can be no dispute that a mortgage loan is not a 'good,' *i.e.,* a tangible chattel." *Sonoda v. Amerisave Mortg. Corp.*, No. 11-1803, 2011 WL 2690451, at *2 (N.D. Cal. July 8, 2011) (citing *Fairbanks*, 46 Cal. 4th at 65). "As to whether a mortgage loan is a 'service,' the California Supreme Court's decision in *Fairbanks* establishes that it is not." *Id.*; *see also Biggs v. Bank of Am. Corp.*, No. EDCV 15-00267-VAP, 2015 WL 3465739, at *6–7 (C.D. Cal. June 1, 2015); *Kirkeby v. JP Morgan Chase Bank, N.A.*, No. 13CV377 WQH-MDD, 2014 WL 7205634, at *9 (S.D. Cal. Dec. 17, 2014); *Benedict v. Wells Fargo Bank, N.A.*, No. SACV 14-0770 AG DFMX, 2014 WL 2957753, at *3 (C.D. Cal. June 30, 2014). Consequently, the Court **DISMISSES WITH PREJUDICE** Plaintiff's fifth cause of action. *See Palestini v. Homecomings Fin., LLC*, No. 10CV1049-MMA, 2010 WL 3339459, at *12 (S.D. Cal. Aug. 23, 2010).

### (ii)   Cause of Action 7: Promissory Estoppel

"The elements of promissory estoppel are (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages 'measured by the extent of the obligation assumed and not performed.'" *Toscano v. Greene Music*, 124 Cal. App. 4th 685, 692 (2004) (quoting 1 B.E. Witkin, Summary of Cal. Law §§ 249–50 (9th ed. 1987)). Defendant argues that Plaintiff fails to plead promissory estoppel because Plaintiff has failed to plead a clear and unambiguous promise and reasonable and detrimental reliance, and because Plaintiff's promissory estoppel cause of action is superfluous in light of Plaintiff's breach of contract cause of action. (MTD Mem. 30–32, ECF No. 56-1.)

The Court agrees with Defendant that Plaintiff has failed to demonstrate detrimental reliance. Plaintiff alleges that she "submitt[ed] payments, as well as documentation requested by Defendants," that her reliance "was reasonable," and that she "lost opportunities to fund other strategies to deal with her default and avoid foreclosure, such as restructuring her debt under the bankruptcy code, or pursuing other options to deal with her default, such as selling or renting the home." (SAC ¶¶ 183–85, ECF No. 53.) However, "where the injury alleged as a result of reliance is that the plaintiffs made payments that

they were already obligated to make under the loan contract, no claim for promissory estoppel is stated." *Reiydelle v. J.P. Morgan Chase Bank, N.A.*, No. 12-CV-06543-JCS, 2014 WL 312348, at *16 (N.D. Cal. Jan. 28, 2014) (citing *Lawther v. OneWest Bank, FSB*, No. C-10-00054 JCS, 2012 WL 298110, at * 19 (N.D. Cal. Feb. 1, 2012); *Newgent v. Wells Fargo Bank, N.A.*, No. 09cv1525 WQH (WMC), 2010 WL 761236, at * 7 (S.D. Cal. Mar. 2, 2010)); *see also Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1160 (N.D. Cal. 2013) (citing *Lawther*, 2012 WL 298110, at *19).  Additionally, "Plaintiff[] . . . make[s] no effort to allege why [she] could not have pursued these alternative measures during the trial period." *Lazo v. Bank of Am., N.A.*, No. C 12-00762 LB, 2012 WL 1831577, at *8 (N.D. Cal. May 18, 2012) (citing *U.S. Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 904 (2005)).  Consequently, Plaintiff has failed to state a claim for promissory estoppel.

Plaintiff's promissory estoppel cause of action, however, is also flawed in a more fundamental respect.  The Restatement (First) of Contracts § 90 (1932) provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."  Consequently, a cause of action for promissory estoppel necessarily implies that the promisor has *not performed* the promised action.  *See, e.g.*, *Glover v. Cal. State Univ. Fresno*, No. 1:15-CV-00152-SAB, 2015 WL 5734418, at *5 (E.D. Cal. Sept. 28, 2015) (dismissing with prejudice promissory estoppel cause of action where "it is unclear whether [defendant's representative] actually breached any promise to Plaintiff"); *Penney v. Wells Fargo Bank, NA*, No. 2:11-CV-05567-ODW, 2012 WL 2071705, at *6 (C.D. Cal. June 8, 2012) (denying motion to dismiss where "Plaintiff allege[d] that she applied for a HAMP modification in reliance on [defendant]'s promise . . . , that [defendant] broke its promise, and that as a result of [defendant]'s broken promise, Plaintiff has incurred additional fees added to the principal of her mortgage"); *Wienke v. Indymac Bank FSB*, No. CV 10-4082 NJV, 2011 WL 2565370, at *6 (N.D. Cal. June 29, 2011) ("Plaintiff could not have been

injured, when no promise was broken.").

Here, Plaintiff's promissory estoppel cause of action is predicated upon Defendant's alleged promise of a permanent loan modification. (*See* SAC ¶ 181, ECF No. 53.) Plaintiff claims that "[she] has yet to receive a permanent loan modification." (*Id.* at ¶ 186.) As Plaintiff makes clear elsewhere in her SAC, however, and incorporates into her promissory estoppel cause of action (*id.* at ¶ 180), Plaintiff did in fact receive (*id.* at ¶ 78)—and execute (*id.* at ¶ 84)—a permanent "Loan Modification Agreement" from Defendant. Consequently, Plaintiff cannot demonstrate that Defendant's promise requires enforcement, and the Court **DISMISSES WITH PREJUDICE** Plaintiff's cause of action for promissory estoppel. *See, e.g.*, *Wienke*, 2011 WL 2565370, at *6.

### (iii)    Cause of Action 8: Unjust Enrichment

"[U]njust enrichment does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." *In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales*, 754 F. Supp. 2d 1145, 1194 (C.D. Cal. 2010) (quoting *Melchior v. New Line Prod., Inc.*, 106 Cal. App. 4th 779, 793 (2003)) (internal quotation marks omitted).

Plaintiff's unjust enrichment cause of action hinges upon the allegation that "Plaintiff conferred upon Defendants . . . mortgage payments, including fees, interest, and other charges . . . beyond that to which Defendants are or were entitled." (SAC ¶ 189, ECF No. 53.)   Defendant argues that Plaintiff's unjust enrichment cause of action must be dismissed because "[t]he Note and [Deed of Trust] . . . required Plaintiff to make the very mortgage payments that she claims unjustly enriched [Defendant]" and "Plaintiff has resided in the Property since 2010 without having made a single loan payment." (MTD Mem. 33–34, ECF No. 56-1.)

The Court finds Defendant's arguments persuasive. "[I]t is settled that 'a quasi-contract action for unjust enrichment does not lie where,' as in this case, 'express binding agreements exist and define the parties' rights.'" *Wilcox v. EMC Mortg. Corp.*, No. SACV 10-1923 DOC, 2011 WL 10065501, at *6 (C.D. Cal. July 25, 2011) (quoting *Cal. Med.*

*Ass'n v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001)); *see also Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009) ("[A] claim for restitution is inconsistent and incompatible with a related claim for breach of contract or a claim in tort.") (citing *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004); *Paracor Fin. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)).

Here, Plaintiff does not contest that there was a Note, Deed of Trust, or executed permanent Loan Modification Agreement.  Additionally, Plaintiff fails to allege—and cannot allege—inequity: none of the payments Plaintiff actually remitted under the TPPs exceeded her original monthly payments, and Plaintiff has lived in the Property for over five years without making any additional payments.  *See Burton v. Nationstar Mortg. LLC*, No. CV F 13-0307 LJO GSA, 2013 WL 2355524, at *14 (E.D. Cal. May 29, 3013) (dismissing unjust enrichment claim where plaintiff's monthly TPP payments were less than his original loan obligations and plaintiff received the benefit of continuing to remain on the property when he made the trial plan payments).  Consequently, the Court **DISMISSES WITH PREJUDICE** Plaintiff's eighth cause of action.  *See id.* at *14, *20.

### D.    Causes of Action 1 Through 3: Violation of the UCL

The purpose of California's UCL is to protect consumers as well as competitors by promoting fair competition for goods and services in commercial markets.  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002) (citing *Barquis v. Merch. Collection Ass'n*, 7 Cal. 3d 94, 110 (1972)).  To that end, the scope of the UCL is quite broad.  *Id.*  A plaintiff need only meet one of three criteria to state a claim for unfair competition.  *S. Bay Chevrolet v. Gen. Motors Accept. Corp.*, 72 Cal. App. 4th 861, 878 (1999).  First, with respect to unlawful acts, the California Supreme Court has held that the UCL "'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq."  *Farmers Ins. Exch. v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992).  Next, a business practice may be deemed unfair, and thus, a violation of the UCL, even if it is not otherwise illegal.  *Cel-Tech Commc'ns, Inc. v. L.A. Cell. Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Unfair business practices include

violations of established public policy, and practices that are "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Cmty. Asst. Recovery, Inc. v. Aegis Sec. Ins. Co.*, 92 Cal. App. 4th 886, 894 (2001) (quoting *People v. Casa Blanca Convalescent Homes, Inc*., 159 Cal. App. 3d 509, 530 (1984), *abrogated on other grounds by Cel-Tech Commc'ns*, 20 Cal. 4th at 184–87 & n.12). Finally, a business practice may be deemed fraudulent in the context of the UCL if the public is likely to be deceived. *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000) (quoting *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647–48 (1996)).

Defendant argues that Plaintiff's first through third causes of action under the UCL must be dismissed because those causes of action are wholly derivative of her breach of contract cause of action (MTD Mem. 15–16, ECF No. 56-1 (citing *W. L.A. Pizza, Inc. v. Domino's Pizza, Inc.*, No. 2:07-cv-07484, 2008 U.S. Dist. LEXIS 45977, at *30 (C.D. Cal. Feb. 26, 2008))), Plaintiff does not have standing to assert her UCL causes of action because she cannot demonstrate an injury in fact and a loss of money or property (*id.* at 16), and Plaintiff fails to state a cause of action under each of the UCL's three prongs (*id.* at 16–21). Because Defendant prevails on its second argument—that Plaintiff lacks standing—the Court does not reach Defendant's first or third arguments.

Preliminarily, the Court notes that Plaintiff's Opposition fails to address Defendant's standing argument. (*See generally* Opp'n, ECF No. 63.) Consequently, as with causes of action five, seven, and eight, *see supra* Part II.C, Plaintiff is deemed to have conceded the issue, *see Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1023 (N.D. Cal. 2011) ("[Defendant]'s failure to challenge Plaintiffs' UCL standing arguments is interpreted as a concession that Plaintiffs have standing under the UCL."); *Coal. of Human Advocates for K9's & Owners v. City & Cnty. of San Francisco*, No. C-06-1887 MMC, 2007 WL 641197, at *14 (N.D. Cal. Feb. 27, 2007) (dismissing claim for lack of standing where "Plaintiff submits no argument to the contrary and does not contend that it could successfully amend the complaint to address this deficiency"); *see also Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) ("[Defendant] has not responded at all . . . ,

conceding the issue.") (citing *Qureshi*, 2010 WL 841669, at *6 n.2; *Sportscare of Am., P.C. v. Multiplan, Inc.*, No. 2:10-4414, 2011 WL 589955, at *1 (D.N.J. Feb. 10, 2011); *Scott v. City of Phoenix*, No. CV-09-0875-PHX-JAT, 2011 WL 3159166, at *10 (D. Ariz. Jul. 26, 2011); *Foster v. City of Fresno*, 392 F. Supp. 2d 1140, 1147 n.7 (E.D. Cal.2005); *In re Online DVD Rental Antitrust Litig.*, No. 09-2029 PJH, 2011 WL 5883772, at *12 (N.D. Cal. Nov. 23, 2011)).   The Court is therefore entitled to dismiss Plaintiff's first through third causes of action with prejudice.  *See, e.g.*, *Qureshi*, 2010 WL 841669, at *6 n.2 (citing *Jenkins*, 398 F.3d at 1095 n.4).

The Court additionally finds, however, that Plaintiff has failed to adequately plead standing.  "To have standing under the UCL, Plaintiff must allege that [s]he 'suffered injury in fact and has los[t] money or property *as a result of* the unfair competition.'"  *Roussel v. Wells Fargo Bank*, No. C 12-04057 CRB, 2012 WL 5301909, at *7 (N.D. Cal. Oct. 25, 2012) (emphasis in original) (quoting Cal. Bus. & Prof. Code § 17204; citing *Degelmann v. Advanced Med. Optics, Inc.*, 659 F. 3d 835, 839 (9th Cir. 2011)).  As such, it is Plaintiff's burden to "prove pecuniary injury . . . and 'immediate' causation."  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 & n.1 (9th Cir. 2011) (citing *Hall v. Time Inc.*, 158 Cal. App. 4th 487, 853–55 (2008); *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009)).

Perhaps relying upon *Rufini v. CitiMortgage, Inc.*, 227 Cal. App. 4th 299, 310–11 (2014), *as modified on denial of reh'g* (July 22, 2014), in which a California Court of Appeal held that allegations that "[defendant]'s unfair and deceptive practices deprived [plaintiff] of the opportunity to pursue other means of avoiding foreclosure," *id.* at 311, Plaintiff alleges that:

> [b]y making payments under temporary modification programs and by continuing to make mortgage payments, Plaintiff forgoed [*sic*] other remedies that she might have pursued to save her home and her precious cash resources, such as restructuring her debt under the bankruptcy code, or pursuing other strategies to deal with her default, *e.g.*, selling or renting the home.  Plaintiff has also given up valuable time and effort to meet Defendants' demands.

20

(SAC ¶ 121, ECF No. 53.)  Unlike in *Rufini*, however, there is no indication that Plaintiff has lost her home and the equity in it.  *Cf.* 227 Cal. App. 4th at 311.  Moreover, "[s]everal courts have found that a plaintiff has not suffered an injury in fact when the loss suffered is a result of a plaintiff's default on the loan." *Diunugala v. JP Morgan Chase Bank, N.A.*, 81 F. Supp. 3d 969, 992 (S.D. Cal. 2015) (citing *Bernardi v. JPMorgan Chase Bank, N.A.*, No. 11-cv-4212, 2012 WL 2343679, at *5 (N.D. Cal. June 20, 2012); *Serna v. Bank of Am., N.A.*, No. 11-10598, 2012 WL 2030705, at *5 (C.D. Cal. June 4, 2012); *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-cv-1390, 2011 WL 311376, at *7 (N.D. Cal. Jan. 28, 2011)).

Here, Plaintiff applied for her loan modification in February 2009.  (SAC ¶ 23, ECF No. 53.)  Although her loan payments were current at that time (*id.* ¶ 16), Plaintiff stopped her pending March 2009 mortgage payment (*id.* at ¶ 24).  Plaintiff does not indicate that Defendant instructed her to cancel the March 2009 payment.  (*See generally id.* at ¶¶ 24–26.)  Defendant's employee "Vickie" only instructed Plaintiff to "fall behind on her payments" to "move up on the list to get help" in April 2009, after Plaintiff had already defaulted.  (*Id.* at ¶ 27 (internal quotation marks omitted).)  Consequently, there is no indication that the damages Plaintiff suffered were not caused by her own default and unwillingness and/or inability to make the required payments under each of the TPPs.  Plaintiff therefore has failed to plausibly allege that she lost money or property as a result of Defendant's actions.  *See, e.g.*, *Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127, 1144 (E.D. Cal. 2013) ("The complaint lacks facts of [plaintiff]'s money or property allegedly lost in that she was obligated to pay her loan and faced foreclosure if she failed to meet her obligations.  Foreclosure of the property fails to support a UCL claim in the absence of allegations of the [plaintiff]'s performance to avoid default."); *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1188 (N.D. Cal. 2012) (dismissing UCL causes of action for lack of standing where plaintiff had already defaulted on her mortgage before alleged misrepresentations by mortgagor during loan modification process); *DeLeon*, 2011 WL 311376, at *7 (dismissing UCL causes of action for lack of standing where "the facts alleged suggest that Plaintiffs lost their home because they became unable to keep up with

monthly payments and lacked the financial resources to cure the default"); *see also Rumbaua v. Wells Fargo Bank, N.A.*, No. 11-1998 SC, 2011 WL 3740828, at \*4 (N.D. Cal. Aug. 25, 2011) (dismissing negligent misrepresentation cause of action where "Plaintiff concedes that she has not made a mortgage payment since November 2009, which belies her allegation that she stopped making payments in 'reliance' on [defendant's] alleged statement").

Although, as noted previously, the Court could dismiss Plaintiff's first through third causes of action with prejudice, *see Qureshi*, 2010 WL 841669, at \*6 n.2 (citing *Jenkins*, 398 F.3d at 1095 n.4), at this time the Court **DISMISSES WITHOUT PREJUDICE** those causes of action.[4]

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's Request for Judicial Notice (ECF No. 57), **GRANTS** Defendant's Motion to Dismiss (ECF No. 56), and **DISMISSES** Plaintiff's Second Amended Complaint (ECF No. 53). Plaintiff's causes of action five, seven, and eight are **DISMISSED WITH PREJUDICE**. Plaintiff's first cause of action is **DISMISSED WITH PREJUDICE** to the extent it is predicated upon her sixth cause of action.

---

[4] With respect to Plaintiff's first cause of action, however, the Court notes that "[t]he unlawful prong of the UCL proscribes 'anything that can be properly be called a business practice and that at the same time is forbidden by law.'" *Lesley v. Ocwen Fin. Corp.*, No. SA CV 12-1737-DOC, 2013 WL 990668, at \*5 (C.D. Cal. Mar. 13, 2013) (quoting *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 717–18 (2001)). "Practices that are forbidden by law only include statutory violations, and do not include common law violations such as breach of contract." *Id.* (citing *Nat'l Rural Telecomm. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074–75 (C.D. Cal. 2003)).

Plaintiff concedes that "[her] UCL claims are derivative of a valid breach of contract claim." (Opp'n 6, ECF No. 63; *see also id.* at 3–4, 5–6.) To the extent that Plaintiff's first cause of action for unlawful business practices is predicated upon her breach of contract cause of action, the Court **DISMISSES WITH PREJUDICE** Plaintiff's first cause of action. *See Lesley*, 2013 WL 990668, at \*5–6. Because the Court dismissed Plaintiff's Rosenthal Act cause of action without prejudice, however, *see supra* Part II.A, Plaintiff may be able to state an unlawful UCL cause of action upon amendment; consequently, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's first cause of action to the extent it is predicated upon violation of the Rosenthal Act.

Plaintiff **MAY FILE** an amended complaint within <u>fourteen days</u> of the date on which this Order is electronically docketed. *Failure to file an amended complaint by this date may result in dismissal*. The Court also cautions Plaintiff that *this may be her final opportunity to file an amended complaint*.

**IT IS SO ORDERED.**

Dated: February 1, 2016

Hon. Janis L. Sammartino
United States District Judge

11-CV-530 JLS (WMC)